THE STATE EX REL. BURBANK and others, Appellants, vs. THE MAYOR AND COMMON COUNCIL OF THE CITY OF SUPERIOR, Respondents.

*February 27 — March 22, 1892.*

*Municipal corporations: Eminent domain: Compensation: Special assessment on property benefited: Constitutional law.*

1. Payment of a judgment against a city for the damages for taking land for a street having been provided for, in accordance with secs. 903, 927, R. S., by the levy of a special assessment upon the property specially benefited, the land-owner is not entitled to compel by *mandamus* the levy of a tax for that purpose upon all the taxable property of the city until the special assessment has proved inadequate.

---

2. Since the city is ultimately liable, and all the taxable property in it may be resorted to for the payment of any sum not realized from the special assessment, the statute providing for such assessment is not in contravention of sec. 13, art. I, Const., prohibiting the taking of private property for public use without just compensation.

APPEAL from the Circuit Court for *Douglas* County.

This was an application to the circuit court for Douglas county for a peremptory *mandamus* against the mayor and common council of the city of Superior, to compel them to levy a tax against all the taxable property in the city for the payment of a judgment in favor of the relators against the city of Superior for $11,323.09, rendered in the said circuit court on the 14th of September, 1891, with interest, and to cause such tax to be collected. It came before the court on an order to show cause, founded on a petition and affidavits showing, in substance, that the city of Superior had proceeded to condemn certain lands owned by the relators for the widening of Lamborn avenue, in that city, under the provisions of secs. 927, 895–904, R. S., and acts amendatory thereof, and sec. 228, ch. 124, Laws of 1891, being the charter of the city; that the verdict of the jury established the necessity of taking the lands for the purpose stated, and made award of damages therefor; that the council enacted an ordinance widening the avenue accordingly, and thereupon the city entered upon and occupied the lands taken for the purposes required, and set apart moneys in the hands of the city treasurer to pay the award; that on appeal from the award to the circuit court the relators obtained a verdict and judgment for the amount above stated, and on the 17th of October, 1891, the relators demanded of the respondents that they levy a tax on all the taxable property of the city to pay it, and demanded payment of the judgment; that on the 12th of November, 1891, the common council levied a special assessment upon such property as they deemed specially benefited by such

improvement, to pay the judgment, and proceedings were in progress for its collection; and it is not claimed but that the assessment is large enough. It was alleged in the petition that the respondents refused to levy a general tax on all the taxable property to pay the judgment, or to take any other measures to pay it except by such special assessment, a copy of which was made a part of said petition; and that a large part of the owners of the lots against which such assessment is levied will not pay it unless compelled to do so by an order or judgment of a court of last resort. The circuit court made an order denying the application, and the relators appealed from it.

For the appellants there was a brief by *Swift, Murphy & Bundy,* and oral argument by *R. E. Bundy.*

For the respondents there was a brief by *A. E. Woolpert* and *J. P. Geiser,* and oral argument by *Mr. Woolpert.*

PINNEY, J.  The contention of appellant's counsel is that the provisions of the city charter and of the general statutes do not provide for a certain and adequate compensation for the lands of the relator taken for public purposes, as therein provided; and, while they do not question the validity or adequacy of the assessment made to pay the judgment recovered by the relators against the city for the lands taken, they contend that they are not bound to wait for their money until the remedy under the assessment is exhausted, but may at once have a peremptory *mandamus* to enforce payment of the amount awarded to them, by the levy and collection of a general tax for that purpose on all the taxable property of the city, notwithstanding the assessment made for the purpose of collecting the same award against a considerable part of the real estate in the city is in process of collection, and that the city is to look to the assessment for reimbursement.

The city of Superior has power by its charter (Laws of

1891, ch. 124, sec. 212) "to condemn lands for streets . . . and other municipal purposes," by proceedings specially pointed out in its charter (secs. 213–229); and by sec. 228 the city may, "at its option, condemn lands for any of the purposes mentioned in section 212, either under the provisions of section 927 and sections 895 to 904, inclusive, of the Revised Statutes of 1878 and the acts amendatory thereof, or under the foregoing provisions" of its charter, and may, "at any time after the verdict of a jury as provided by section 899 of the Revised Statutes, enter upon and occupy such lands for streets . . . as are described in its resolution and application for a jury to condemn and appraise the same, until the condemnation proceedings contemplated by the law shall have been fully determined." The city in this instance elected to and did proceed to condemn the relators' lands for the purpose stated, in conformity with the provisions of the Revised Statutes above referred to. After the jury, under sec. 899, R. S., had established the necessity for taking the lands in question, and had made an award of damages sustained by the relators, they appealed from the award to the circuit court, pursuant to sec. 900; and the appeal, which under sec. 901 "shall be considered as an action pending in said court, and be so entered," having been tried, the relators recovered the verdict in question, upon which the statute contemplates that a judgment shall be entered and a certified copy thereof be transmitted to the city clerk. Sec. 902 provides that, "at any time before causing any such land to be actually taken or put to public use, and before the rendition of a judgment in the circuit court for damages, the common council may discontinue all proceedings theretofore taken." By sec. 903, for the purpose of payment of the expenses *including all damages and costs incurred* for the taking of private property, the common council may, by resolution, levy and assess the whole, or any part *not less*

*than half,* of such expenses as a tax upon such property as
they shall determine is specially benefited thereby, making
therein a list thereof, in which shall be described every lot
or parcel of land so assessed, with the name of the owner
thereof, if known, set opposite. It then provides for two
weeks' publication of such assessment, with notice of a
time when the common council will meet at their usual
place of meeting and hear all objections which may be made
to such assessment or any part thereof. The council may
modify it in whole or in part, and, any time before the
1st day of November thereafter, any party liable may pay
any such tax to the city treasurer, and, if at that time any
such tax remains unpaid, it is to be placed, with five per
centum thereon additional, upon the annual tax roll, in ad-
dition to and as a part of all other city taxes therein lev-
ied on such land, to be collected therewith.

The proceedings in question amount to a compulsory
purchase by the city of the use of the lands so required for
street purposes, at a price to be fixed and collected as pro-
vided by the provisions above cited, under sec. 228 of the
city charter. The liability of the city becomes fixed by
causing the land to be actually taken or put to public use,
or by the rendition of a judgment in the circuit court for
damages assessed for taking it; but its liability is *sub modo*
only,— that is to say, while the city is ultimately liable for
the damages embraced in the award or judgment and inter-
est thereon after the land is actually taken, and all the tax-
able property may be resorted to as a fund for payment,
yet this resort can be had only after the special assessment
has failed to produce the just compensation to the land-
owner secured by the constitution. After the liability of
the city is thus fixed, it stands in the position of a pur-
chaser bound to make payment, and the land-owner as a
vendor by compulsion. The ultimate liability of the city
is absolutely fixed by the judgment which secs. 901 and 902

State ex rel. Burbank and others vs. The City of Superior.

plainly authorize the court to render against it.  The special assessment may be for the whole, *or any part not less than half,* of such damages, and, if made for only half or any greater part, the city is subject to be proceeded against by *mandamus* at once for the residue.  The assessment, whether for all or a part not less than half of the damages, is declared to be "for payment of the expenses, including all damages and costs incurred for the taking of private property" (sec. 903); and if for part only, it is for payment *pro tanto* only.  In the recent work of Mr. Lewis on Eminent Domain (p. 533), it is said "that if the statute is so far silent upon the subject as to leave the matter open for judicial construction, then the proper judgment to be rendered will depend upon the following considerations: If possession has already been taken of the property either by consent or otherwise, or if the property has already been taken by virtue of an instrument of appropriation, as it may be in some states, before the compensation is paid, then a personal judgment, with all its incidents, may be properly entered."  The court will in all such cases control the use of the judgment according to the rights of the parties as thus determined.

2. The statutes under consideration, as thus construed, are in conformity with the constitutional requirement that "the property of no person shall be taken for public use without just compensation."  Const. art. I, sec. 13.  Compensation actually made or the means provided by which it can certainly be obtained is indispensable.  Where property is taken for a public use by a municipal or *quasi-*municipal corporation, the taxable property thereof constitutes a fund to which the owner may resort in the way pointed out by law, and the existence of a method by which payment may thus be compelled satisfies the constitutional requirement.  *Norton v. Peck,* 3 Wis. 724; *Brock v. Hishen,* 40 Wis. 674; *Smeaton v. Martin,* 57 Wis. 371;

*State v. Hogue,* 71 Wis. 389, 390. The land-owners will have in this case the proceeds of the special assessment realized within the reasonable period allowed by law for that purpose, and for any residue that may remain they may resort to their judgment already recovered against the city, and by *mandamus,* if need be, compel its payment, with interest as compensation for delay; or the levy and collection of a general tax for that purpose. For such payment the taxable property of the city "constitutes a pledge or fund to which the owner may resort for payment in the manner prescribed, with absolute certainty and safety, and the providing of such method of enforcing payment out of such a pledge or fund is the making of just compensation for the property taken within the meaning of the constitution." *Smeaton v. Martin,* 57 Wis. 371. In the case of *Sage v. Brooklyn,* 89 N. Y. 189, relied on by the relators' counsel, it was held that a law remitting the land-owner for his *sole* remedy to a fund to be obtained by taxation according to benefits of certain specified lands in a limited assessment district, is not a certain and adequate provision for compensation, such as is required to meet the constitutional prohibition against the taking of private property for public use without making just compensation; but it will be observed that this case is not in point, for we hold that the special assessment is not the sole remedy and reliance of the land-owner to obtain his just compensation; that the city is ultimately liable, and all the taxable property in it may be resorted to for the payment of any sum not realized from the special assessment. And in *Sage v. Brooklyn* the court construed the legislation there under consideration as giving a like remedy and held it constitutional. *Genet v. Brooklyn,* 94 N. Y. 645; *McCormack v. Brooklyn,* 108 N. Y. 49; *Donnelly v. Brooklyn,* 121 N. Y. 14. The insistence of the relators upon a peremptory *mandamus* for the immediate levy of a tax upon the gen-

eral property of the city for the payment of their judgment, without awaiting the result of the special assessment, is a clear concession that there is secured to them, by existing laws, the just compensation required by the constitution. Had the common council complied with the demand of the relators, and levied a general tax on all the taxable property of the city, they would have had a double tax levied for a single purpose, with all the attendant injustice, uncertainty, and confusion; for property already adequately assessed for purposes of payment of relators, judgment would thus be subjected to an additional burden beyond special benefits for that purpose, and the property of owners not specially benefited would be at once burdened with a tax which the law required should be borne by property specially benefited. Under such circumstances it is probable that the collection of a general tax thus prematurely levied might be restrained by injunction. For these reasons the circuit court properly denied the prayer of the relators' petition.

*By the Court.*— The order of the circuit court is affirmed.