E. R. SISSON, Appellant, v. BOARD OF SUPERVISORS OF BUENA VISTA COUNTY, ET AL., Appellees.

**Drainage:** STATUTES: TITLE. The title of an act entitled "An act to promote the public health, convenience and welfare by . . . draining the lands of the State," and also providing for the establishment of drainage districts, is sufficient under the constitution to authorize provisions therein for the drainage of surface water from agricultural lands.

**Eminent domain:** PUBLIC USE. The public use for which property may be taken under the constitution is to be determined by the legislature in the first instance, but such use must inure to the benefit of those concerned, when considered as members of the community and not as individuals, and the right to participate in the benefits must be common, although not effecting all persons in the same manner.

**Public use:** LEGISLATIVE DETERMINATION. The act of the Thirtieth General Assembly authorizing the creation of drainage districts and declaring that the drainage of surface water from agricultural lands shall be considered a public benefit, is not unconstitutional because defining what constitutes a public use and thus precluding judicial inquiry respecting the public benefit in any particular instance, but such act shall be considered merely as designating the general field within which the drainage of land shall be deemed a public benefit.

**Drainage districts:** APPEAL FROM ACT OF SUPERVISORS: TRIAL BY JURY. The drainage law enacted by the Thirtieth General Assembly is not in violation of the constitutional right of a trial by jury, in providing that an appeal from an order of

the board of supervisors establishing a drainage district may be heard in equity.

**Special assessments:** BENEFITS. The drainage law of the Thirtieth General Assembly is not open to the objection that it authorizes the levy of special assessments upon property in an amount greater than the benefit received, as the same expressly forbids assessments in excess of benefit.

**Assessments:** WAIVER OF OBJECTION: SPECIAL PRIVILEGES. The provision of the drainage law which gives to a taxpayer who waives objection to the assessment the right to pay the same in installments, is not in violation of the provision of the federal Constitution which requires that no state shall deny to any person the equal protection of the law.

**Drainage bonds:** NOT A COUNTY OBLIGATION. Drainage bonds issued under the law enacted by the Thirtieth General Assembly are to be paid from taxes levied upon property situated in the district where the improvement is made, and are not an obligation of the county as a whole.

**Eminent domain:** DAMAGES: SECURITY OF PAYMENT. The provision of the drainage law that private property may be taken when the damages resulting therefrom have been secured to be paid, is not unconstitutional since that instrument does not require payment of damages in advance.

**Same.** It is competent for the legislature to delegate to a county auditor the power to determine the character of the security to be given for damages resulting from the taking of private property for drainage purposes, and the conditions upon which the same should be voided.

**Same.** The giving of a sufficient bond for the use of persons allowed damages for the taking of their property for drainage purposes, conditioned on its being void upon payment of damages out of a fund created by a levy of a special drainage tax, is sufficient to secure the payment of such damages.

*Appeal from Buena Vista District Court.*— HON. A. D. BAILIE, Judge.

THURSDAY, JULY 13, 1905.

ACTION in equity to restrain by injunction the defendant board of supervisors from further proceeding in the matter of constructing a ditch designed and intended to

reclaim by drainage a considerable tract of agricultural lands in said county, to establish a drainage district, etc. The defendants appeared and answered, whereupon the plaintiff moved for a decree in his favor upon the pleadings, and a decree was made and entered in which a portion only of the relief prayed for was granted. Both parties appeal, and for convenience the plaintiff will be denominated as appellant. *Affirmed* on plaintiff's appeal. *Reversed* on defendant's appeal.

*Mack & Deland,* for appellant.

*F. F. Faville* and *A. L. Whitney,* for appellees.

BISHOP, J.— The pleadings disclose that the proceedings on the part of the defendant board complained of were being taken and had pursuant to the provisions of chapter 68, page 61, Acts 30th General Assembly. Plaintiff makes direct allegation that the steps already taken were in strict conformity to the provisions of that act, and that, in respect of the further proceedings to be had, exact compliance in all respects with the requirements of the act was intended. And of these matters the answer makes admission. It is the contention of plaintiff, to be stated in detail presently, that the proceedings so being had and proposed to be had are unauthorized and illegal, for that the act of the General Assembly under which done, in respect at least of many of its provisions, is in contravention of the Constitution and void. And this is the general subject presented for our consideration.

Necessary to a consideration of the questions as precisely made and presented by the record, we should have the material provisions of the act before us, and we set out the same in substance, as follows:

The act is entitled An act to promote the public health, convenience and welfare, by leveeing, ditching and draining the lands of the State, and providing for the establishment

of levees, drainage districts, or for the changing of natural water courses to secure better drainage, and providing for the construction of ditches, drains and water courses and prescribing the method for so doing, and providing for the assessment and collection of the costs and expenses of the same, and issuing improvement certificates, or issuing and selling bonds therefor.

Section 1 provides that the board of supervisors of any county shall have jurisdiction, power and authority to establish a drainage district or districts, and cause to be constructed as hereinafter provided any . . . ditch, drain or water course, . . . in such county, whenever the same will be of public utility or conducive to the public health, convenience or welfare, and the drainage of surface waters from agricultural lands shall be considered a public benefit and conducive to the public health, convenience, utility and welfare.

Sec. 2. Whenever a petition signed by one or more of the land owners whose lands will be affected by, or assessed for the expenses of, the proposed improvement, shall be filed in the office of the county auditor setting forth that any body or district of land in the county, described . . . is subject to overflow or too wet for cultivation, and that the public benefit or utility or the public health, convenience or welfare will be promoted by draining, ditching, tiling or leveeing the same, . . . the board shall at its first session thereafter . . . appoint a disinterested and competent engineer . . . and he shall proceed to examine and survey the lands described in said petition, and other lands if necessary, and locate such improvement or improvements, . . . as will be for the public benefit or utility, or conducive to the public health, convenience or welfare and he shall make return of his proceedings to the county auditor, etc.

By section 3 it is provided that, if the engineer recommend the establishment of the drainage district, the auditor shall, in a prescribed manner, give notice of the pendency of the petition, the favorable report of the engineer, the day set for hearing before the board of supervisors, and that all claims for damages must be filed five days before such day for hearing.

Sec. 5. The board of supervisors at the session set for the hearing on said petition . . . shall thereupon proceed to hear and determine the sufficiency of the petition in form and manner, . . . and, if deemed necessary, the board may view the premises and if they shall find that such . . . drainage district would not be for the public benefit or utility nor conducive to the public health, convenience or welfare, they shall dismiss the proceedings; but, if they shall find such improvement conducive to the public health, convenience or welfare or to the public benefit or utility, and no claim shall have been filed for damages as provided in section four hereof, they may, if deemed advisable, locate and establish the same in accordance with the recommendations of the engineer, but if any claims have been filed for damages, . . . then the board . . . shall proceed no further than to determine the necessity of the . . . drainage district and further proceedings shall be continued to an adjourned, regular or special session, the date of which shall be fixed at the time of the adjournment; and the county auditor shall appoint three appraisers to assess such damages, etc.

Sec. 6. The appraisers . . . shall proceed to . . . determine and fix the amount of damages to which each claimant is entitled and shall . . . file with the county auditor reports in writing showing the amount of damages sustained by each claimant. . . . When the time for final action shall have arrived, and after the filing of the report of the appraisers, said board shall consider the amount of damages awarded in their final determination in regard to establishing such levee or drainage district, and if in their opinion the cost of construction and the amount of damages awarded is not excessive and a greater burden than should be properly borne by the land benefited by the improvement, they shall locate and establish the same, and shall thereupon proceed to determine the amount of damages sustained by each claimant, and may hear evidence in respect thereto, and may increase or diminish the amount awarded in respect thereto, and any party aggrieved may appeal from the finding of the board in establishing the improvement district, or from its finding in the allowance of damages, to the district court, . . . which appeal shall be tried in the district court as an ordinary proceeding, except that when

the appeal is from the order of the board in establishing the
.. . . drainage district, it shall be tried in equity.

Sec. 7. The amount of damages finally determined by
the board in favor of any claimant . . . shall be re-
quired to be paid in the first instance by the parties benefited
by the said levee or drainage district, or secured to be paid
upon such terms and conditions as the county auditor may
deem just and proper, and after such damages shall have
been paid or secured as aforesaid, the board shall divide said
improvement into suitable sections, etc.

Sec. 12. When the . . . drainage district . . .
shall have been located and established as provided for in
this act, . . . the board shall appoint three commis-
sioners; . . . and they shall within twenty days after
such appointment personally inspect and classify all the
lands benefited by the location and construction of such
.. . . drainage district, or the repairing or reopening of
the same, . . . in a graduated scale of benefits, to be
numbered according to the benefit to be received by the pro-
posed improvement; and they shall make an equitable ap-
portionment of the costs, expenses, costs of construction, fees
and damages assessed for the construction of any such im-
provement, or the repairing or reopening of the same, and
make report thereof in writing to the board of supervisors.
.. . . This classification when finally established shall re-
main as a basis for all future assessments connected with the
objects of said levee or drainage district, unless the board, for
good cause, shall authorize a revision thereof. . . . The
auditor shall cause notice to be served . . . of the time
and manner provided for the establishment of a . . .
drainage district, which notice shall state the amount of
special assessments apportioned to such owner, upon each
tract or lot, the day set for hearing the same before the board
of supervisors and that all objections thereto must be made
in writing and filed with the county auditor on or before
noon of the day set for such hearing. When the day set for
hearing shall have arrived, the board of supervisors shall
proceed to hear and determine all objections made and filed
to said report and may increase, diminish, annul or affirm
the apportionment made in said report or in any part thereof
as may appear to the board to be just and equitable; but in
no case shall it be competent to show that the lands assessed

would not be benefited by the improvement, and when such hearing shall have been had the board shall assess such apportionment so fixed by it upon the lands within such levee or drainage district.

By section 20 it is provided that when any ditch or drain shall cross a public highway the cost of construction shall be paid by the township trustees from the road fund of such township, and whenever a bridge over such ditch or drain is necessary the board of supervisors shall build the same, and pay the cost thereof out of the county bridge fund. Further, if any highway is benefited by the construction of the ditch, the road district shall pay its proportion of the cost according to benefits; the amount to be determined by the board of supervisors.

Sec. 27. The special assessment for benefits made by the commissioners appointed for that purpose, as corrected and approved by the board of supervisors, shall be levied at one time by the board against the property so benefited, and when levied and certified shall be payable at the office of the county treasurer. If the owner of any parcel of land, lot or premises against which any such levy shall have been made and certified, which is embraced in any certificate provided for in this section, shall within thirty days from the date of such assessment promise and agree . . . that in consideration of having the right to pay his assessment in installments, he will not make any objection of illegality or irregularity as to the assessment of benefits, or levy of such tax . . . but will pay said assessment with interest . . . as shall be prescribed by resolution of the board, such tax so levied against the land, lot or premises of such owner shall be payable in ten equal installments, . . . but where no such terms and agreement in writing shall be made . . . then the whole of said special assessment . . . shall mature at one time . . . and shall be collected at the next succeeding March semi-annual payment of ordinary taxes, etc.

Sec. 28. If the board of supervisors shall determine that the estimated cost of reclamation and improvement of such district of land is greater than should be levied in a single year upon the lands benefited . . . it may fix the

amount that shall be levied and collected each year and may issue drainage bonds of the county, bearing not more than six per centum annual interest and payable semi-annually, in the proportions and at the times when such taxes shall have been collected, and may devote the same at par to the payment of the work as it progresses or may sell the same at not less than par and devote the proceeds to such payment. . . . Such bonds shall be issued for the benefit of the district numbered thereon and each district shall be numbered by the board of supervisors and recorded by the auditor, said record showing specifically the lands embraced in said district and upon which the tax has not been previously paid in full. In no case shall the amount of bonds exceed the benefits assessed. Each bond issued shall show expressly upon its face that it is to be paid only by a tax assessed, levied and collected on the lands within the district so designated and numbered, and for the benefit of which district such bond is issued; nor shall any tax be levied or collected for the payment of said bond or bonds, or the interest thereon, on any property outside the district so numbered, designated and benefited.

Further necessary to our consideration are certain allegations of fact contained in the petition, and of which the answer makes admission. Therein it is said that the district instantly proposed to be drained embraces portions of three townships in Buena Vista county, and included therein are lands of which plaintiff is owner; that he has filed a claim for damages which will accrue to him by reason of the construction of the proposed ditch across and over his lands; that the amount of his damage has been fixed and reported by appraisers appointed as by the act in question provided, which report has been approved by the defendant board. It is then said that there has been filed with and approved by the county auditor a bond, with sureties, running to the county, for its use and benefit, and for the use and benefit of the persons allowed damages in the establishment of the instant drainage district; it being recited as the condition of such bond that, " in the event of the payment of the damages awarded out of the funds created by the levying

of the special drainage tax as by said chapter contemplated, then this bond to be void," etc. And plaintiff says that in no other way, form, or manner has the damages fixed and allowed been paid or ·secured, and no other action. has been taken or record been made as to the terms or conditions upon which such damages were to be secured or paid than is shown by said bond, notwithstanding which the defendant board is about to take possession and proceed with the work of construction. It is further alleged that drainage bonds are about to be issued and sold as provided for in the act in question, to the injury of plaintiff as a taxpayer of the county, and as a landowner within the proposed drainage district.

Having now the substantive facts of the case before us, it may be stated that submission was had in the court below upon these several grounds of contention, as presented by plaintiff: First, That the title of the act in question is defective, in that the subject-matter of the act is not clearly expressed therein, and that, as stated, it contains more than one subject. Second. That the provision in section 1 of said act reading as follows, " And the drainage of surface waters from agricultural lands shall be considered a public benefit, and conducive to the public health, convenience, utility and welfare," must be taken as an attempt on the part of the Legislature to predetermine every fact question as to use, and by its simple declaration make that a public use which otherwise would confessedly be a private use. Further, that here is an attempt on the part of the Legislature to invade the right of the judiciary to determine whether, as matter of fact, the drainage of surface waters from agricultural lands is a public benefit or use. Third. That section 6 of said act provides for appeal from the action of the board in establishing a drainage district, but deprives appellant of the right of trial by jury, and is therefore violative of section 9 of article 1 of the Constitution of the state, which provides for trial by jury, and thus oper-

ates to deprive the party of his property without due process of law. Fourth. That said act authorizes the levy of a special assessment upon property for a greater amount than the benefit received to such property. Fifth. That section 27 of said act is in violation of section 6, article 1, of the Constitution. Sixth. That section 28 of said act is unconstitutional, because it simply provides a means by which the supervisors of the county may loan the credit of the county to a particular district therein, and thus indirectly place upon the taxpayers of the entire county the burden of paying for the construction of a particular ditch, and subject them to the payment of-a tax for that purpose, when they have had no notice of the prior proceedings, and have had no benefits from the improvements made. Seventh. That section 7 of the act providing for the payment of damages, or security for payment thereof by bond to be approved by the auditor, is not in conformity with section 18, article 1, of the Constitution, relating to the exercise of the right of eminent domain.

In respect of such matters of contention, the finding of the court below was against plaintiff as to each thereof, except the seventh; that as to such seventh ground the holding was in accord with the contention of plaintiff, and an injunctional decree was entered accordingly. As adversely affected, the respective parties appeal.

I. The Constitution of this state provides that "every act shall embrace but one subject, and matters properly connected therewith; which subject shall be expressed in the title." Constitution, section 29, article 3. Precisely stated, it is the contention of appellant that in the title of the instant act there is not "a suggestion of an intention to provide drainage districts to drain surface water from agricultural lands simply to improve such lands." The point is hypercritical. By its title, the act is one to promote public health, etc., by draining the lands of the state, the establishment of drainage

1. DRAINAGE: statutes; title.

districts, etc. " Lands of the state " means, of course, lands within the state, and includes agricultural lands. And by the terms of the act these latter are authorized to be drained because conducive to the public health, etc., and not " simply to improve such lands." The intention of the constitutional provision was to prohibit the insertion in an act of incongruous matter, having no connection or relation with the general subject as expressed in the title. Accordingly the title is sufficient, although confined to general terms, if it answers as a key to the subject-matter of the act. *State v. County Judge,* 2 Iowa, 280; *State v. Forkner,* 94 Iowa, 1; *Cook v. Marshall Co.,* 119 Iowa, 384. We conclude that there is no merit in the contention.

II. The second ground of contention involves, as it seems to us, consideration from two different view points: the one presenting the question of the power of the Legislature; the other presenting questions having 2. EMINENT DO- to do only with the manner of exercise of the MAIN: public use. power. The general contention is predicated upon section 18 of the Bill of Rights, whereby it is provided that " private property shall not be taken for public use without just compensation first being made," etc. This provision has been held to prohibit by implication the taking of private property for any use not public in character. *Bankhead v. Brown,* 25 Iowa, 540; *Richards v. Wolf,* 82 Iowa, 358. The right of eminent domain is an attribute of sovereignty. The power of exercise may be delegated, and, of necessity, this must be done through an act of the Legislature, the mouthpiece of the people. It is for that body to determine in the first instance, therefore, what are the public uses, to subserve which a grant of power may properly be made. That this may not be done arbitrarily, and having no proper regard for the character of the conditions to which application is to be made, or the results to follow the use, may readily be conceded. Thus a grant of the power of exercise intended to or which has the effect solely to sub-

serve a private use will be void, and this whatever the guise adopted, or the form of words employed.   And it is the province of the courts to scrutinize every act of the lawmaking power, and to condemn whenever violation of the supreme law is made to appear.   It is to be said, however, that the doctrine common to statutory construction, from the view point of the Constitution, is applicable here, and from which it follows that interference on the part of the courts will not be warranted, except there be presented a clear, plain, and palpable case of transgression.   *Morrison v. Springer,* 15 Iowa, 304; *Railway v. Board, etc.,* 67 Iowa, 199; *Herkimer v. Keeler,* 109 Iowa, 680.

It must be confessed that there is no standard by which to determine in all cases what is a public use, or what can fairly be regarded as a public benefit, and therefore conducive to the public health, welfare, etc.   The Constitution contains no words of definition, and it seems to remain for each act which is brought forward, aided, of course, by the disclosed purpose and object thereof, and by the conditions, stated or well known, upon which it is to operate, to furnish an answer to the test.   In a former case this court, speaking through Dillon, J., said:   " If a public use be declared by the Legislature, the courts will hold the use public, unless it manifestly appears by the provisions of the act that they can have no tendency to advance and prosecute such public use."   *Bankhead v. Brown, supra.*   And this from another court:   " If the subject-matter of the legislation be of such a nature that there is any doubt of its character, or if by any possibility the legislation may be for the welfare of the public, the will of the Legislature must prevail over the doubts of the court."   *In re Madera I. Dist.,* 92 Cal. 296 (28 Pac. 272, 675, 14 L. R. A. 755, 27 Am. St. Rep. 106).   And the use will be scrutinized less closely when the property is vested in the state or some public agency than when it is vested in a private corporation.   *United States v. Railway,* 160 U. S. 668 (16 Sup. Ct. 427, 40 L. Ed. 576);

Lewis on Eminent Domain, section 158. The following cases also have a direct bearing on the general subject: *Hazen v. Essex,* 12 Cush. 475; *Welton v. Dickson,* 38 Neb. 767 (57 N. W. 559, 22 L. R. A. 496, 41 Am. St. Rep. 771); *Railway v. Porter,* 43 Minn. 527 (46 N. W. 75); *Sweet v. Rechel,* 159 U. S. 380 (16 Sup. Ct. 43, 40 L. Ed. 188); *Railway v. Stockton,* 41 Cal. 147; *Daggett v. Colgan,* 92 Cal. 53 (28 Pac. 51, 14 L. R. A. 474, 27 Am. St. Rep. 95); *Railway v. Moorehouse,* 112 Wis. 1 (87 N. W. 849, 56 L. R. A. 240, 88 Am. St. Rep. 918), and note, with cases cited.

In holding a use to be public, it has never been deemed essential that the entire community, or any considerable portion of it, should directly enjoy or participate in the improvement or enterprise. This is made necessary because in the very nature of things the benefits to be derived from improvements local in character or peculiar in adaptation must be subject to the restrictions of locality, the necessities of individual and community life, etc. *Talbot v. Hudson,* 16 Gray, 425; *Railway v. Railway,* 16 Mont. 504 (41 Pac. 232, 31 L. R. A. 298, 50 Am. St. Rep. 508); *Williams v. School Dist.,* 33 Vt. 271; *Coster v. Tide Water Co.,* 18 N. J. Eq. 54; *Zigler v. Menges,* 121 Ind. 99 (22 N. E. 782, 16 Am. St. Rep. 357). So, also, a moment's consideration will serve to make it clear that controlling effect cannot be given the fact, however apparent it may become, that the construction of a particular improvement will result incidentally in benefit to private rights and interests. If the contrary were true, it is doubtful if there could be prosecuted any public work requiring an exercise of the power of eminent domain. Not a milldam, canal, or railway intended to be operated by private corporations for private gain could be built, however necessary to the public convenience or welfare, not even a schoolhouse site or ground for cemetery, park, market house, street, or highway could be acquired, although intended to remain under control of

public authority, and for the undoubted use and benefit of the public, without making disclosure of influence, more or less marked, upon private rights and property interests. *Bankhead v. Brown, supra. Township, etc., v. Hackmann,* 48 Mo. 243. Perhaps no nearer approach to accuracy in the way of a general statement can be had than to say that the mandate of the Constitution will be satisfied if it shall be made reasonably to appear that to some appreciable extent the proposed improvement will inure to the use and benefit of parties concerned, considered as members of the community or of the state, and not solely as individuals. While, however, the benefit must be common in respect of the right of use and participation, it cannot be material that each user shall not be affected in precisely the same manner or in the same degree. *Coster v. Tide Water Co., supra; Ross v. Davis,* 97 Ind. 79; *McQuillen v. Hatton,* 42 Ohio St. 202; *Pocantico, etc., Co. v. Bird,* 130 N. Y. 249 (29 N. E. 246); Lewis on Eminent Domain, section 161.

With these general principles in mind, we may now proceed directly to a consideration of the provision of the instant act. And first as to the question of legislative power.

**3. PUBLIC USE: legislative determination.** In making appeal to the Constitution, plaintiff does not undertake to deny generally the right of the Legislature to authorize the construction of drains, ditches, etc., when conducive in fact to public benefit, by public authorities and at public expense, and as incidental thereto, to confer the power to take private property. Thus far, at least, the question would seem to be settled by our former decisions. *Hatch v. Pottawattamie Co.,* 43 Iowa, 442; *Patterson v. Baumer,* 43 Iowa, 477; *Oliver v. Monona Co.,* 117 Iowa, 43. The measure of plaintiff's contention, if we correctly interpret, is that inasmuch as the question of public use, in its last analysis, is judicial, the Legislature may not, by a sweeping declaration, as was instantly attempted, foreclose such question; that, on the contrary, if the use declared is not public by general recog-

nition, every proposed grant of power, to be valid, must be accompanied by provision for independent judicial determination at the hands of some competent tribunal, as the concrete question of use may arise. The contention has precise relation to the concluding phrase of the section, "And the drainage of surface waters from agricultural lands shall be considered a public benefit," etc.

It is the argument of counsel that here is an attempt to authoritatively declare for the drainage of all those agricultural lands in the state which can be said to be injuriously affected by surface water, and this as of a public use and benefit, without regard to locality, extent, or condition; further, that the effect thereof in practical experience will be to relieve boards of supervisors from all necessity for the exercise of independent judgment or discretion, and to authorize them to act in each case arising, arbitrarily and as a finality, simply and solely in virtue of the declaration of the act itself. Accordingly counsel insist that the act in effect authorizes a taking without regard to whether the use is in fact public or private. The argument goes too far. Not only that, but, as it seems to us, counsel fail to discriminate properly between the power of the Legislature to mark out a general field within which improvements of the character in question shall be considered as a public benefit, and the matters of question arising upon construction of a grant of power, or which are incident only to the execution of such power. It must be remembered that with the Legislature rests primarily the whole subject-matter of public improvements. The necessity for making and the time of making, together with the character and extent thereof, can alone be determined by it. Now, from what follows in subsequent sections of the instant act, it is made clear to our minds that by the term " agricultural lands," as used in the first section, it was meant to designate generally those various and well-known bodies of land lying within the state, which, owing to location and surface conditions, habitually

collect and retain surface waters to such an extent as to presently unfit the same for agricultural purposes. Accordingly the primary inquiry comes down to this: Was it competent for the Legislature to declare generally for the reclamation of such lands by drains or ditches constructed at public expense, and as a matter of public benefit? Or as in reality the question is to be determined by us, it resolves itself into this form: Having general knowledge, as the Legislature had knowledge, must the courts say that in reason no public benefit can result from the carrying out of a general plan or scheme adopted for the drainage of such lands?

Manifestly the heart of the inquiry thus presented is the character of the use. That shown to be public in the sense that reasonably to be expected therefrom is some utility, convenience, or benefit, capable of being enjoyed in common, the declaration of the act amounts to no more than to declare in favor of the building of railroads as a public use, or in favor of sewer systems in cities, or that the turnpiking and graveling of all country roads leading across swamp or marsh lands "shall be considered a public benefit." Now, it must be sufficient, in reason and in the light of experience, to say that the presence of marshes and swamps is a menace to the comfort and health of community life. And it is certain that such bodies of land, oftentimes thousands of acres in extent, interfere with and make difficult the establishment and repair of roads and other means of communication. Clearly enough, these are matters essential not only to the enjoyment of the rights, but to the performance of the duties, incident to citizenship. Moreover, back of these and kindred matters lie the varied interests of the several counties and of the state in having the vast tracts of land now lying under enforced idleness brought in to swell the agricultural resources of the state. And, however desirable such a result, it must be apparent that it can never be accomplished through individual effort. It is possible

only as a public measure, to be worked out through public agencies and at public expense. While of doubtful authority, this latter consideration has been held in some jurisdictions to be alone sufficient to give character as of a public use to improvements such as are here in contemplation. But as we have seen, our own cases give recognition to the use on the broad ground of public utility, convenience, etc., and this is the doctrine which obtains in most of the other states having constitutional provisions similar to our own. *Hatch v. Pottawattamie Co., supra; Zigler v. Menges, supra; Chesbrough v. Com'rs,* 37 Ohio St. 508; *Norfleet v. Cromwell,* 70 N. C. 634 (16 Am. Rep. 787); *Winslow v. Winslow,* 95 N. C. 24; *State v. Polk Co.,* 87 Minn. 325 (92 N. W. 216, 60 L. R. A. 161); *Lile v. Gibson,* 91 Mo. App. 480; *Hager v. Board,* 47 Cal. 222; 15 Cyc., page 59, and cases cited in note.

The case of *Hager v. Board,* above cited, went on appeal to the Supreme Court of the United States, and was there affirmed. See 111 U. S. 701, 4 Sup. Ct. 663, 28 L. Ed. 569. Analogous to a taking for the purposes of drainage of agricultural lands is that for the purposes of irrigation of such lands, and such latter has been held to be a public use for which the Legislature may even authorize a private person or corporation to exercise the power of eminent domain. 15 Cyc., page 599, and cases cited; Lewis on Eminent Domain, section 202, and cases cited in the note.

Now, passing the question as to the character of the use, the further questions possible to arise must have relation to the nature and extent of the grant of power, the conditions under which to be exercised, and the manner thereof. So, also, it follows, as a matter of course, that any steps taken under an act, proper in itself, may be called in question as violative of the constitutional prohibition. In all cases of attack upon the act the offense alleged is laid at the door of the Legislature, and the acting agency is chargeable only as instrumentality. In all cases of offense

arising out of conduct the responsibility must, of course, be with the acting agency. First, then, is the instant act vulnerable in itself to challenge in the respect that it authorizes a taking for private use? We can conceive that there may be cases where the drainage of a slough or tract of wet land would result in so slight a public benefit as to be scarcely appreciable. But that it was not intended by the instant act to deal with such cases seems too clear for dispute, and this from a most casual reading. The initiative petition required must declare for a public use, and the board of supervisors, convened in session, and in the exercise of a judicial function well understood, must find that the particular ditch or drain petitioned for will in fact result in a common benefit and be of community use. Moreover, by express authority of the act, any party interested may challenge such finding as to the fact of use, as made by the board, through the medium of an appeal to the courts of the State, whose jurisdiction to pass finally upon the question of use is conceded on every hand. In this situation there can be no room for saying that a taking is authorized, having no other object or effect than to subserve a private interest; and we need not pursue the subject further than to say that for the purposes of practical application the word " shall," as used in the statute, can properly be read as " may." As to the phase of the question involving conduct, it is sufficient in the first instance to refer to the presumption that public officers will perform their duties conformably to law. If a failure be pointed out, of omission or commission, not only does the act itself provide a remedy by appeal, but, independent thereof, courts of equity have plenary power to prevent the accomplishment of an act, the doing of which is prohibited by the Constitution. In the instant case it is conceded that the defendant board acted in strict conformity to the law, and we may presume that it acted intelligently. We are not now called upon to review any act of discretion on its part, or the correctness of its judgment.

III. The provision of the Constitution upon which the third matter of contention is predicated reads as follows: "The right of trial by jury shall remain inviolate;

**4. DRAINAGE DIS-** . . . but no person shall be deprived of **TRICTS: appeal from action of** life, liberty or property, without due process **supervisors; trial by jury.** of law." Upon reading the act in question, it will be observed that an appeal to the courts is provided for, and such may be taken either from the order establishing the drainage district, or from the order making allowance of damages; in cases of the former the appeal shall be heard in equity; in cases of the latter the trial shall be by ordinary proceedings. The contention of plaintiff has relation only to appeals of the former class, and the argument is confined to the proposition that he is entitled to have submitted for the finding of a jury the questions whether the proposed drainage district is a public benefit, and whether the land owned by him is to be benefited, and therefore proper to be included in such district. This contention is also without merit. Within the meaning of the Constitution, the right of trial by jury extends only to those cases where a jury was necessary according to the course of procedure at common law. *State v. Orwig,* 25 Iowa, 280; *Littleton v. Fritz,* 65 Iowa, 488. Here there can be no issue save that made on appeal, and, however tried, it can amount to no more than calling in review the discretionary action of the board of supervisors. Such an issue is peculiarly within the jurisdiction of a court of equity, and counsel has found no cases where jurisdiction has been assumed by a court sitting at common law, and a verdict taken. *In re Bradley,* 108 Iowa, 476. Analogous in principle are cases of appeal from boards of assessment equalization. *Davis v. Clinton,* 55 Iowa, 549. "Due process of law" means according to the established forms of law, and the requirement is satisfied by the grant of a right to proceed in equity. *McLane v. Leicht,* 69 Iowa, 401.

IV. The fourth matter of contention is no more than

touched upon in argument, and we may dispose of it in a
word.    The point made, as we understand it, is that the
scheme devised by the act for the distribution

5. SPECIAL AS-
SESSMENTS:
benefits.

of the cost of the improvement by special as-
sessment over the properties included in a des-
ignated field of benefit will have for a practical result the
levy of assessments for a greater amount than the benefits
received.    We do not see how this can be true.    The prac-
tice of levying assessments upon abutting or adjacent prop-
erties benefited by a public improvement has been too many
times upheld to require the support of an additional holding.
The cases are familiar to the profession.    In respect of the
result to be attained and the method of attaining it, the
instant act does not differ materially from others which have
received the stamp of judicial approval.    As the act does
not authorize, but on the contrary forbids, assessments in
excess of benefits, we cannot assume that a violation is in-
tended or will be attempted.

V.    Section 27 of the act is made the subject of attack
as being violative of section 1 of the Fourteenth Amend-
ment to the federal Constitution, which provides that " no

6. ASSESSMENTS:
waiver of ob-
jections; spe-
cial privileges.

state shall  .  .  .  deny to any person the
equal protection of the laws."    The precise
contention is that the provision in the section
which extends to those taxpayers who waive objections the
privilege of paying in installments, and, on the other hand,
as argued, imposes a penalty on the one who neglects to
waive, and prefers challenge as against the assessment,
amounts to a denial of the equal protection of the law.    This
contention is without merit.    The provision is that the as-
sessment shall be levied at one time, and when levied and
certified shall be payable at the office of the county treas-
urer.    From there on the provision is for a privilege, not to
one, but to all.    There is nothing in the nature of a require-
ment.    It would be absurd to say that one may be heard to
complain that he is not given equal protection, when he is

accorded the same privilege that is extended to all others.
If he does not choose to accept, it is equivalent to an election
on his part to pay in one sum upon his liability to pay being
determined.    State legislation does not deny the equal pro-
tection of the laws if all persons subject to it are treated
alike under similar circumstances.    *Tredway v. Railway,*
43 Iowa, 527; *Owen v. Sioux City,* 91 Iowa, 190; *Bucklew
v. Railway,* 64 Iowa, 603.

VI.    Counsel for plaintiff seem to think that the pro-
vision made in section 28 of the act for the issuance of
drainage bonds in cases where an undue hardship would be
imposed if the expenses of an improvement
were to be levied and collected in a single year
is void, and this for the reason that such
amounts, in effect, to " a loan of the credit of the county to
the parties primarily liable for the costs of the drain."    This
contention is wholly refuted by the concluding sentence of
the section.    Each bond issued must show that it is based
upon a tax levied on the lands within the drainage district,
and it can be paid only from taxes so levied and collected.
Bonds thus issued cannot be held to constitute an obligation
of the county as a whole.    *Davis v. Des Moines,* 71 Iowa,
500; *Clinton v. Walliker,* 98 Iowa, 655.

7. DRAINAGE BONDS: not a county obligation.

VII.    It is the reading of section 18 of the Bill of
Rights that " private property shall not be taken for public
use without just compensation first being made, or secured
to be made, to the owner thereof, as soon as the
damages shall be assessed," etc.    The last con-
tention of plaintiff challenges, in virtue of said
section, the provision of section 7 of the act in question,
in so far as that a taking is thereby authorized upon the
damages being " secured to be paid upon such terms and
conditions as the county auditor may deem just and proper."
And it is the gist of the argument of counsel that there can
be no appropriation of property when the damage, as in this
case, has been finally fixed and determined, except upon

8. EMINENT DO-MAIN: damages; security of payment.

payment of such damage; that the expression "secured to be made" can be construed to have force of application only to cases where a taking precedes a final determination of the amount of damages, and pending such determination. And such was the view taken by the court below. On the other hand, it is insisted on behalf of the defendant board that the express warrant of the Constitution is that legislation may be had providing for deferred payments in the case of a taking; the only condition being that the act authorizing the taking shall provide for the giving of adequate security. We are relieved from carrying our consideration beyond the limits of construction by the concession made in argument to the effect that the bond given as recited in the petition is ample as to amount, and not to be questioned as to the solvency of those executing the same. Proceeding, then, it must be said that the provisions of a legislative act having reference to the subject of compensation, how and when to be made, etc., in common with the provisions relating to the subject of use, are to be construed as valid where such is possible. Lewis on Eminent Domain, section 453a, and cases cited in the note, among which are the following: *Cherry v. Board, etc.,* 52 N. J. Law, 544 (20 Atl. 970); *Western U. Tel. Co. v. Williams,* 86 Va. 696 (11 S. E. 106, 8 L. R. A. 429, 19 Am. St. Rep. 908); *Monongahela N. Co. v. United States,* 148 U. S. 312 (13 Sup. Ct. 622, 37 L. Ed. 463; St. Joseph v. Crowther, 142 Mo. 155, (43 S. W. 786).

As it seems to us, a mere reading of the provision of the Constitution in question is sufficient to warrant the conclusion that, within the contemplation of the makers of that instrument, conditions might arise making it desirable to accomplish a taking by the state of private property in advance of the fact of actual payment. And apparently it was not conceived that any natural right inherent in private ownership forbade the authorization of such taking. It was conceived, however, that justice to the owners of private

property required that, in case of legislative provision being made for the exercise of the right of taking, the right to compensation should be safeguarded by making such taking conditional in all cases upon the giving of security. *Long Island, etc., Co. v. Brooklyn,* 166 U. S. 685 (17 Sup. Ct. 718, 41 L. Ed. 1165). This must be so, because, if the intention had been to forbid a taking before compensation actually paid, as held by the trial court, the provision in reference to security is meaningless for all practical purposes. There could be no object in securing an owner while yet he held title and possession of his land. Within our view, it follows therefrom that an act which authorizes a taking for public use without payment of damages in advance, but which makes requirement that the damages shall be secured, and thus made certain of future payment, is in direct harmony with the constitutional provision, rather than being at variance therewith. *People v. Railway,* 3 Mich. 496; *State Park v. Henry,* 38 Minn. 266 (36 N. W. 874).

The Constitution, it will be observed, goes no farther than to require that security be given. There is no schedule of conditions respecting the character of the

9. Same.      security to be given, nor as to the time when or the manner in which the security shall be avoided by payment of the damages assessed. It follows from this, and of necessity, that all such matters are committed to the wisdom and justice of the Legislature. And as to a legislative provision addressed to such subject, the doctrine also obtains that the courts may interfere to condemn only when such provision is found to be clearly, plainly, and palpably violative of the constitutional requirement. *Com. Court v. Street,* 116 Ala. 28 (22 South. 629); *Albany v. Gilbert,* 144 Mo. 224 (46 S. W. 157); Lewis on Eminent Domain, section 453a. Now it will be observed that by the provisions of the instant act the damages, if not required to be paid in the first instance by the parties immediately benefited, the

same are required to be " secured to be paid upon such
terms and conditions as the county auditor may deem just
and proper." This, in our view, meets the constitutional
requirement, at least as to the form of the legislation. The
act not only gives recognition to the supreme law, but makes
compliance therewith a condition to all further proceeding.
It is not material that the Legislature did not of itself fix
upon the character of the security to be taken, or the con-
ditions upon which the same should be voided. It was not
required to do so, and that it might delegate to an officer
of the county in which the improvement was sought to be
made an authority to make determination in each instance
is not open to question. Counsel do not even suggest that
such power does not exist.

The foregoing considerations make it clear that there
is nothing left to deal with, except the concrete question of
the adequacy of security as provided in any given case.
10. SAME.       What is adequate security where the taking is
for distinctly public purposes has frequently
been made the subject of judicial consideration. Thus it
has been held that where proper provision is made for the
levy and collection of an assessment fund, and it is made
the duty of the public officers to pay when collected, such
is sufficient. The property of the taxing district then be-
comes security, and such is adequate. And again it is suffi-
cient if the payment of damages is made a charge on the
public treasury of the government, general or local, which
exercises the power, or on the fund raised by it by general
taxation. 15 Cyc. 645, and notes 69 and 70, in which the
cases are collected. Among others are the following: *Ash
v. Cummings,* 50 N. H. 591; *Railroad v. Daugherty,* 40
Ind. 33; *State v. Otis,* 53 Minn. 318 (55 N. W. 143); *In
re New York,* 99 N. Y. 569 (2 N. E. 642); *Martin v. Tyler,*
4 N. D. 278 (60 N. W. 392, 25 L. R. A. 838); *Zimmerman
v. Canfield,* 42 Ohio St. 463; *Long v. Fuller,* 68 Pa. 170;

*State v. Superior,* 81 Wis. 649 (51 N. W. 1014); *Sweet v. Rechel,* 159 U. S. 380 (16 Sup. Ct. 43, 40 L. Ed. 188).

By the terms of the instant act, it will be observed that full provision is made for the levy of assessments and the collection thereof, and that the fund created shall be devoted solely to the payment of the damages and expenses of the improvement district. So, too, a provision for the issue of bonds to pay for a general public improvement had been held to be a sufficient compliance with the requirement for security. *German, etc., Society v. Ramish,* 138 Cal. 120 (69 Pac. 89, 70 Pac. 1067); *Robert v. Sadler,* 104 N. Y. 229 (10 N. E. 428, 58 Am. Rep. 498); *Bates v. Titusville,* 3 Pittsb. R. 434. Now, it must be apparent that in any given case a requirement for adequate security will be satisfied if that which is proposed to be given makes it reasonably certain that compensation will in due time be made. The Constitution and the statute unite in requiring such security to be given, and to the county authorities is left the matter of detail. As a bond confessedly ample was demanded and given in the instant case, it is not necessary for us to hold sufficient the security arising in such cases by force or operation of law. The right of a damage claimant goes no farther than to insist that security shall be given. He cannot dictate the character thereof.

It is our conclusion upon the whole case that there is made to appear no violation of the Constitution in any of the respects contended for. And from this it follows that the injunctional decree as entered by the court below should not have been granted; that, on the other hand, the petition of plaintiff should have been dismissed as a whole. The cause will be remanded for judgment in harmony with this opinion.

*Affirmed* on plaintiff's appeal. *Reversed* on defendants' appeal.