## PRESTON v. HULL.

**Water:** DIVERSION: RIGHTS OF ADJOINING OWNERS: PRESCRIPTION. Where one of two adjoining owners of land turns the water from his land, whether it be mere surface water or not, upon the land of his neighbor, he does not, by the mere use of the water in that way for ten years, acquire the right to continue to so use it (see Code, sec. 2031, and cases cited in opinion), and he cannot complain if his neighbor seeks to protect his land by draining the water to a point where it may possibly flow back again upon the land of him who first diverted it.

*Appeal from Harrison District Court.*—HON. C. H. LEWIS, Judge.

FILED, MAY 11, 1889.

THE plaintiff and defendant are owners of adjoining farms. This is an action in equity, by which the plaintiff seeks to enjoin the defendant from making a a ditch upon defendant's land, which it is alleged will cause water to flow on the plaintiff's land, to his injury.

There was a trial upon the merits, and a temporary injunction which had been granted was dissolved, and the petition dismissed.   Plaintiff appeals.

*S. H. Cochran,* for appellant.

*C. MacKenzie* and *J. H. Smith,* for appellee.

ROTHROCK, J.—The parties each own eighty acres of land.   The line •between their farms runs east and west, and the plaintiff owns eighty acres south, and the defendant the tract north, of the line.   A stream of water enters plaintiff's land from the east, near the northeast corner, and runs a short distance in a westerly direction, and curves to the north· across the line, and then in a southwesterly direction, to a culvert in the Chicago and Northwestern Railroad, which crosses the western part of the two tracts in a southwesterly direction.   The defendant commenced cutting a ditch from the stream on his own land, and near the line, due west to the railroad right of way.   The plaintiff objected to this, on the alleged ground that if the ditch should be completed the water would flow therein to the railroad, and then back on the west part of plaintiff's land, to his injury.   Both parties concede that the owner of agricultural lands has no right to collect surface water on his own land, and discharge it in a body upon the adjoining land, to the injury of the owner.   The plaintiff contends that it is not mere surface water, but that it is a natural stream, with well-defined banks and channel.   The defendant's contention is that it is immaterial whether it is a natural stream or mere surface water.   He claims that he has the right to cut the ditch and discharge the water on the railroad right of way, even if by flowing back it may injure the plaintiff's land, because the plaintiff wrongfully diverted the water from his own land on the defendant's land in the first instance, and the defendant has the right to turn it back.   The principal contention in the case is, which is the dominant and which the servient estate? or, in other words, if the water as it enters plaintiff's land

had been left free to flow upon the natural surface, would it have crossed the line, and over upon the land of the defendant? Upon this question of fact, and upon the question as to the plaintiff's alleged interference with the natural course of the water, whereby it was turned upon the defendant's land, a large number of witnesses were examined. The taxable costs of the case in the district court amounted to nearly four hundred dollars.

It is apparent from this statement that we cannot review the evidence. We will state the facts which, in our opinion, should be considered as established by the testimony. The stream of water which is the cause of all the contention and trouble is of recent origin. Some twenty years ago, before the land was brought under cultivation, and when nearly all the adjacent country was in a state of nature, there was a low swale or slough which entered the plaintiff's land at the point where it is now claimed there is a natural stream. The bottom of this slough or depression was then covered with grass. In times of rain the water flowed over it in a stream. A very decided weight of evidence is that the water did not then flow across the line and onto defendant's land. It is true that at times of flood the water may have spread upon defendant's land, but actual levels show that the natural flow was over the plaintiff's land to the southwest. The plaintiff improved his land some twenty years ago. The defendant did not improve until later. The water in the slough was a source of trouble to the plaintiff. He plowed and scraped in the slough on his own land. He and his witnesses claim that this was only for the purpose of straightening the bed of the stream. But we think the preponderance of the evidence is that this was done to prevent the water from flowing in a southwesterly direction over his land. Indeed, we think it is fairly shown that he, by the use of boards and banks of earth, turned the water upon the defendant's land. If this be correct,—and, as we have said, we think the evidence fairly establishes it,—the defendant

would have had the right then and there, and no matter whether the water should be regarded as mere surface water or a natural stream, to erect an embankment or dike across the course of the water, and thus keep it off his land. But the plaintiff contends that, even if it be true that by making barricades of boards, and plowing and scraping, he changed the flow of water from his land to defendant's, the acts were done more than ten years before this action was commenced, and that he has by lapse of time acquired the right to the flow of water as it now is by adverse right or prescription. We do not think this position is sound. The right thus acquired would be in the nature of an easement. Section 2031 of the Code is as follows: "In all suits hereafter brought in which title to any easement in real estate shall be claimed by virtue of adverse possession of the same for the period of ten years or by prescription, the use of the same shall not be admitted as evidence that the party claimed the easement as his right, but the fact of adverse possession shall be proved by evidence distinct from and independent of the use, and that the party against whom the claim is made had express notice thereof, and these provisions shall apply to public as well as private claims." It is not claimed that there had been adverse use of the flow of water for ten years prior to the enactment of the Code, and there is no evidence other than the mere use that the defendant, or those under whom he claims, had express notice that the claim was adverse. Under this provision of the law and the decisions of this court, the plaintiff acquired no right to continue the flow of water on the defendant's land. See *State v. Mitchell*, 58 Iowa, 567; *Zigefoose v. Zigefoose*, 69 Iowa, 391; *State v. Birmingham*, 74 Iowa, 407. Having found that the plaintiff should have taken care of the water which came upon his land from the east, he is in no position to complain of the defendant for cutting a ditch and conducting the water on the railroad right of way. If he had awaited the completion of the ditch to the railroad right of way, and

then found that he was injured by water being cast back upon his land, he could have, by a ditch or drain, conducted it southwest, to a culvert in the railroad near the Boyer river. Our conclusion is that the decree of the district court should be . AFFIRMED.