MASON CITY AND FT. DODGE RAILROAD COMPANY and CHICAGO GREAT WESTERN RAILWAY COMPANY v. BOARD OF SUPERVISORS and GEO. L. WEBSTER ET AL., Appellants.

**Drainage:** MAINTENANCE OF BRIDGES: LIABILITY OF RAILWAY COMPANY.
1   Where a drainage ditch is constructed in the bed of a natural watercourse across a railroad right of way, the company is required, by the provision of Code section 2021, to keep its culvert or bridge over the same in repair.

**Same.** The right of drainage along a natural watercourse is a natural easement appurtenant to the land through which it runs, and every owner of land along the watercourse must take notice of the rights of others therein: So that a railway company in constructing its culverts or bridges over a natural watercourse does so subject to the right to use the same for such drainage purposes as may be necessary and proper for the public interest; and the company must at its own expense keep its culverts or bridges over the same in condition to meet the reasonable requirements of the public in this regard.

**Same:** CONSTITUTIONAL LAW: DUE PROCESS. Drainage as authorized by the statute is for the public use, convenience and welfare, and hence the making of such improvement is within the police power of the State: And any injury to a railway embankment and culvert over a natural watercourse, by digging a drainage ditch in the bed of the watercourse across the right of way, is not the taking of property within the meaning of the constitution.

**Same:** CONSTRUCTION OF DRAINS: DAMAGES. The statutes providing for the construction of drainage ditches across the right of way of a railway company, contemplate that the cost of making the ditch itself shall be an element of damage resulting to the company from a construction of the work, but the cost of building or rebuilding a culvert or bridge rendered necessary because of the improvement shall not be an element of such damage.

Deemer and Sherwin, J. J., dissenting.

*Appeal from Wright District Court.*—HON. J. H. RICHARD, Judge.

FRIDAY, MAY 14, 1909.

REVERSED ON REHEARING WEDNESDAY, SEPTEMBER 29, 1909.

APPEAL by defendants from assessment of damages awarded to plaintiff resulting from extending a ditch across their right of way.

*Peterson & Knapp,* for appellants.

*Healy & Healy* and *Birdsall & Birdsall,* for appellees.

LADD, J.—A drainage district was established including lands in Wright and Humboldt Counties. To drain these a ditch was located along the route of a natural water course across which the Mason City & Ft. Dodge Railway Company had constructed its railroad, operated at the time of the trial by the Chicago Great Western Railroad Company. The railroad grade at the crossing was seven feet above the natural surface, and, concerning an opening for the passage of water, one of plaintiff's witnesses testified on cross-examination that "at or near" this place there was a wooden box four by five feet through the embankment for the purpose of letting the water through, and plaintiffs introduced the return of the drainage engineer to the notice to them in pursuance of section 18, chapter 68, Acts 30th General Assembly, 1904, reciting that their engineer "agreed that the ditch could cross about two hundred and fifty feet southwest of where the company now has a wooden box and that the opening under the railroad track should be as large as a drainage 'ditch planned at that place." Aside from this, there was no evidence concerning the character, location, or purpose of the opening through the embankment, or how it came to be placed where it was. The profile indicated that the proposed ditch through the right of way would be four feet wide at the bottom, with sides sloping out one and one-half feet to each foot, in depth, seven feet deep, and therefore twenty-five feet wide at the top. The appraisers estimated the damages to plaintiffs in the excavation of the ditch through its right of way to be $400, and upon appeal to the district court this was increased to $2,200. Evidence was received on the trial tending to show the cost of a concrete and steel culvert through the embankment over the ditch and also that of a wooden bridge, and what sum of money at the rate of five percent interest per annum would be necessary "for the original construction and subsequent maintenance of the

frame structure which cost originally $500, and that had to be renewed every eight years."

The trial court in its rulings on the admissibility of the evidence and instructions to the jury excluded from consideration the fact that the opening in the railroad embankment was for the excavation of a ditch in the bed of a natural water course, and held that the entire cost of construction, together with that of maintenance in the future as compared with the cost of maintaining the embankment, should be allowed as damages. Whether the wooden culvert two hundred and fifty feet away was so located as to serve as one placed as required by section 2021 of the Code does not appear. That section makes it the duty of the railway company to "maintain and keep in good repair all bridges with their abutments which it may construct for the purpose of enabling its railway to pass over . . . any water course." So that, even were the drainage district chargeable with the expense of construction, that of maintaining could not rightly have been included in the assessment of damages.

1. DRAINAGE: maintenance of bridges: liability of railway company.

Nor do we think that expense of building or rebuilding a culvert or bridge over a ditch excavated in the bed of a natural water course passing through a right of way is a proper element of damages in such a case. The increased volume of water and the improvement to carry it away are but the results of better drainage of the tillable lands on either side of the track which the company was bound to anticipate. Of course, a railroad company may not be required to widen or deepen a water course through its right of way at its own expense any more than this may be exacted of a landowner, but the public has the undoubted authority to widen and deepen such a course, even though this shall render necessary the rebuilding of the bridge or culvert, and, when this is done, the expense is a proper one for the railway company

2. SAME.

to bear. The right of drainage through the natural water course is a natural easement appurtenant to the land of every individual through which it runs, and every owner of the land along such water course is obliged to take notice of the easement by others along the same. In constructing its embankment or culverts or bridges through it, the company does so subject to the right of the state by appropriate agencies to provide for such use of the natural water course as subsequently may become necessary and proper for public interests. *Chicago, B. & Q. R. Co., v. People,* 200 U. S. 562 (26 Sup. Ct. 341, 50 L. Ed. 59, s. c. 212 Ill. 103, 72 N. E. 219). The Illinois Supreme Court, after a review of the decisions, declared that "the great weight of authority is that where there is a natural way, or where a highway already exists and is crossed by the railroad company under its general license of building a railroad, and without any specific grant by the legislative authority to obstruct the highway or waterway, the railroad company is bound to make and keep its crossing and at its own expense in such condition as shall meet all the reasonable requirements of the public as changed conditions and increased use may demand." This was fully approved on appeal by the Supreme Court of the United States. See *Chicago Northwestern Railway Co. v. Drainage District No.* 5, 142 Iowa, 607.

In this State establishment of the drainage district is authorized "whenever the same will be of public utility or conducive to the public health, convenience or welfare and the drainage or surface water from agricultural lands shall be considered a public benefit and conducive to public health, convenience, utility and welfare." Drainage within the contemplation of the above statute is for public use, convenience and welfare (*Sisson v. Board of Supervisors of Buena Vista County,* 128 Iowa, 442), and, this being so, the making of the improvement is within the police power of the

3. SAME: constitutional law: due process.

State, and injury such as here claimed, being merely inci-
dental thereto, can not be regarded as the taking of prop-
erty within the contemplation of the Constitution. *Chicago,
B. & Q. R. Co. v. People, supra.*

As we understand the briefs, there is no controversy
over these propositions; the companies resting their claims
on certain statutes in force at the time when these proceed-
ings were had. Section 18, chapter 68, Acts
30th General Assembly, made it the duty of
the engineer in charge of the work "to notify
the railroad company by serving a written notice upon a
station agent of such company or its lessee or receiver that
he will meet the company at the place where the said pro-
posed ditch, drain or water course crosses the right of way
of said company, said notice fixing the time of such meet-
ing which shall not be less than five days after the service
of the same, for the purpose of conferring with such rail-
road company in relation to the place where, and the man-
ner and method in which such improvement shall cross
such right of way." Upon failure to agree, these matters
are to be determined by the railroad commissioners. As
seen, they did agree, and section 19 of the above chapter
provided that "such railroad company shall within thirty
days after being notified by the county auditor to construct
the same and the time within which the work must be
completed, proceed to construct such levee, ditch, drain or
change of natural water course in accordance with the plans
and specifications as shown by the plat and profile of the
engineer. If such railroad company shall fail, neglect or
refuse to do so within the time fixed in such notice, the
auditor shall cause the work to be done under the super-
vision of the engineer in charge of the improvement and
the railroad company shall be liable for the charge thereof,
to be collected by the county in any court having juris-
diction. All other proceedings in relation to railroads shall
be the same as provided for individual property owners in

4. SAME: con-
struction of
drains: dam-
ages.

the district, except that the cost of constructing the improvement across its right of way shall be considered as an element of its damages by the appraisers thereof; and the commissioners to assess benefits shall fix and determine the actual benefits to the property of the railway company within the levee or drainage district and make return thereof with their regular return. Such special assessment shall be a debt due personally from the railroad company, and unless the same is paid by the railroad company as a special assessment, it may be collected in the name of the county in any court having jurisdiction."

In construing this statute, the obligation of the railroad company, but for its conditions, to construct a culvert or bridge over this ditch at its own expense is not to be ignored. Its location and character had been agreed upon, and it is to be assumed to be such as the successful drainage of the district required. But for the clause in the statute "that the cost of constructing the improvement across the right of way shall be considered as an element of damages" there would be no basis for the claim of the companies for compensation. To what, then, do the words "the improvement" refer? Manifestly "the ditch." It is mentioned as the improvement throughout the drainage statutes, and in section 18, chapter 68, the meeting of the drainage engineer and that of the company is "for the purpose of conferring with such railroad company in relation to the place where and the manner and method in which the improvement shall cross such right of way." If they fail to agree, then the railroad commissioners are to "determine the place where and the course, direction, and manner in which such ditch, drain or water course shall cross such right of way." The company is required by the next section to construct "such levee, ditch, drain or change of natural water course in accordance with the plans and specifications as shown by the plat and profile of the engineer." The character of the culvert or bridge

the company shall erect is no part of such plat or profile or of the plans of the drainage engineer. These are matters solely for the consideration of the railroad company, and, though made necessary by, form no part of "the improvement" contemplated by the statute. The cost of extending the ditch across the right of way, and not of constructing or reconstructing culverts or bridges rendered necessary because of this being done and their maintenance forever, is the element of damages contemplated by the statute.

As the trial court ruled otherwise, its order fixing the amount of damages is *reversed*.

DEEMER, J. (dissenting).—The question in this case is solely one of statutory construction. There is no disputing the fact that the railway company had constructed a solid embankment over and across what is termed in the opinion a natural water course, and was taking care of the water which originally flowed in this so-called channel to the satisfaction of all parties interested by a culvert which was at least four by five feet in size, some two hundred and fifty feet distant from the so-called water course. The drainage ditch, as planned, did not cross where the company had located its culvert and where it was taking care of all the water which naturally flowed therein, but at a place two hundred and fifty feet distant, which place was agreed upon by the engineer in charge of the work and the railway company. It is also shown that the manner and method in which the improvements should cross the right of way was agreed to, and that this contemplated, as it must have done, the construction of a bridge across the excavation which was necessitated by the establishment of the drainage district, and for no other reason. Having taken care of the natural flow of water at another place in its right of way, presumably with the consent of all parties in interest, for no one seems to

have been objecting to it, the railway company was not
bound either at common law or by any statute to take care
of the natural or any increased flow at some other place
without being compensated therefor. If this be not true,
then the company was bound to maintain two bridges or
culverts and two excavations through its right of way
to take care of both the natural and the increased flow of
water. That this obligation was not imposed upon it at
common law nor could it be by statute is to my mind easily
demonstrable. It is elementary law that the owners of land
through which water flows may divert this water by an artifi-
cial channel, provided they return the water to the original
water course when it strikes the land of a lower proprietor
without material diminution in volume. And it is well es-
tablished that riparian owners may change the natural chan-
nel of a water course and divert it into a new channel,
provided, of course, it is returned to the original course
before it reaches the land of a lower proprietor. The
new channel thus established will then become the water
course with all the rights and privileges incident to the
natural one. This is the rule everywhere established, and
it has been recognized and enforced by this court. See
*Meir v. Kroft* (Iowa), 80 N. W. 521; *Matheson v. Ward,*
24 Wash. 407 (64 Pac. 520, 85 Am. St. Rep. 955);
*Preston v. Hull,* 77 Iowa, 309 (42 N. W. 305) and the
many cases cited in 30 Am. & Eng. Ency. of Law (2d
Ed.) 362, 363. When the channel of a stream is thus
changed, neither the lower riparian owner nor any other
person has a right to demand that the water be restored
to its old channel. This is one of the inalienable rights
which an owner has to the use of water flowing through
his land. There can be no doubt from the record in this
case that there was no natural water course at the place
where the proposed ditch crossed the right of way. That
there was an old abandoned channel there I may admit;
but the real water course was where the culvert had been

erected some two hundred and fifty feet away.    The old channel was the property of the landowners, and the easement of the railway company acquired in the manner shown was superior to the right to have the channel re-opened at a place where I may admit it originally ran. There, certainly were not two water courses taking care of the same water across this right of way.    Either the new or the old was the water course, and under all the authorities which I have been able to find the new, or, more properly speaking, the changed one, became the water course in so far as this case is concerned.    Surely the petitioners for the drain could not insist upon the railway company's changing back to the original water course.    They had of necessity to take the situation as they found it.    Even if it be assumed that some one interested in the natural flow might have compelled a return of the water to the original channel, these petitioners for the drainage district could not compel it in this roundabout and indirect method.    The real fact is that the drainage ditch did not follow the natural or, more properly speaking, the artificial channel, which, as I have already said, took upon itself the character of a water course; and the railway company is bound, if the majority opinion be adopted, not only to excavate its roadbed and build a ditch through its right of way, but to construct a bridge solely because of the establishment of this drainage district and not to take care of the water flowing in its natural or artificial channel.

Going now to the construction of the statute which was in force when this action was brought, we find that it is provided that whenever the board of supervisors shall have established any drainage district or change of any natural water course, and the ditch, drain, or water course crosses the right of way of any railway company, such railway company shall proceed to construct such ditch, drain, or change of natural water course in accordance

with the plans and specifications as shown by the plat and profile of the engineer. It is also provided that all other proceedings in relation to railroads shall be the same as provided for individual property owners within the district, "except that the cost of constructing the improvement across its right of way shall be considered as an element of damages by the appraisers thereof." What is meant, then, by the cost of constructing the improvement across its right of way when the board shall have established a ditch, drain, or change of any natural water course? The majority, as I understand it, hold that nothing can be awarded to the railway company save the expense of making the new excavation, although it must be conceded that a bridge is necessary and is a part of the expense to which the railway company must be put. That the construction of bridges is a part of such improvement it seems to me is clear. Section 20, chapter 68, Laws 30th General Assembly seems to recognize that the construction of bridges is a part of the improvement, for it says that, whenever the making of the improvement necessitates the building of a bridge, the board of supervisors shall build and construct the same. Moreover, I think all will agree that, if the ditch is so constructed through the land of an individual owner as that a bridge will be necessary to enable him to get from one part of his land to another, the cost of the building of the bridge must be taken into account as an element of his damages. If this be not true, then his property is taken from him without compensation, and any such interpretation of the statute would to my mind make it unconstitutional. The majority say, however, that no such interpretation should be placed upon the statute when applied to railway companies, for the reason that the Supreme Court of the United States has decided that, as applied to such companies, the cost of erecting a larger bridge across a natural water course to take care of the increased flow of water by the estab-

lishment of the drainage district may be imposed upon a
railway company without violating the fundamental con-
stitutional provision against taking property without com-
pensation or without due process of law.

As I read the majority opinion, the decisions from
the Supreme Court of Illinois and from the Supreme
Court of the United States are cited, not as applicable to
the case now before us, but as furnishing a guide to the
interpretation of the statute now before us for construction,
with the thought that the legislature passing the statute
in question must have had these decisions in mind when it
passed the act. The fundamental difficulty with this posi-
tion is that the act was passed and approved April 29,
1904, while the decision of the Illinois court was not
handed down until October 24, 1904, and the decision in
the Supreme Court of the United States was not made
until March 5, 1906. If it be thought that the Legis-
lature anticipated the decision of the Supreme Court of
the United States and knew the law, although it had not
been pronounced by the supreme tribunal, it is enough
to say in answer that four out of nine judges of that
court did not know the law because they dissent from the
opinion upon which the majority seem to place some
reliance. It must be remembered, too, that the Supreme
Court of the United States held that while the expense
attendant upon the removal of the present bridge and cul-
vert and the timbers and stone placed by the company in
the creek, as well as the expense of the erection of any
new bridge which the company may elect to construct in
order to conform to the plan of the commissioners, should
be borne by the railway company, the expense attendant
upon the removal of the soil in order to enlarge, deepen
and widen the channel must be borne by the drainage dis-
trict. Again, it must not be forgotten that in the case
of *Railway v. Illinois* there was a bridge across a natural
stream at the exact place where the drainage ditch was

established. How different is the instant case? Here there was no bridge at the place where the ditch was to cross the right of way, and no opening in the embankment. There was another water course two hundred and fifty feet away where there was a bridge which must be kept up and maintained by the railway company to take care of the water flowing through it. Now, for the sole purpose of taking care of the water coming from the drainage district, it is bound to open up its embankment and build a new bridge to take care of that water, and nothing else. Surely this is a taking of its property without compensation and without due process of law. The authorities cited by the majority do not run counter to the views thus expressed.

Going back now to the matter of legislative construction, the Thirty-Second General Assembly, which convened after the decisions referred to in the majority opinion, concluded that it would change the law so as to comply with the rules announced in those cases and also provide for just such a situation as we find in this case. If the majority be correct in their interpretation of the acts of the Thirtieth General Assembly, there was absolutely no need for any change in that law, and the act of the Thirty-Second General Assembly was of no purpose. It is a fundamental rule that in the construction of statutes and in arriving at the legislative intent that legislative construction should be looked to in determining the intent of that body. It will be noticed that in quoting the section and chapter of the acts of the Thirty-Second General Assembly the majority adopt the view therein expressed almost exactly as stated. The act of the Thirtieth General Assembly must have meant something else, or there would have been no need for the subsequent enactment, and that the Legislature believed that my construction of the Thirtieth General Assembly is correct I have no doubt; for we must assume that there was some mis-

chief intended to be cured else there was no purpose in the subsequent enactment.

Going now to Acts 32d General Assembly, 1907, chapter 95, section 3, we find that sections 18 and 19 of chapter 68 of the acts of the Thirteenth General Assembly were amended so as to read: "Whenever the board of supervisors shall have established any drainage district or change of any natural water course and the ditch, drain or water course crosses the right of way of any railroad company, the county auditor shall cause notice to be served upon the railway company directing the company to construct such improvement according to the plans and specifications at the place designated, across its right of way, and to build and construct, or rebuild and reconstruct the necessary culvert or bridge where any ditch, drain or water course crosses its right of way, within thirty days, and upon receiving such notice, it shall be the duty of the railway company to construct the improvement across its right of way according to the plans and specifications, and to build and construct, or rebuild and reconstruct the necessary culvert or bridge. . . . and the cost of constructing the improvement across the right of way of such company, not including the cost of building and constructing or rebuilding and reconstructing any necessary culvert or bridge, shall be considered as an element of such company's damages by the appraisers thereof; and the cost . . . of any necessary culvert or bridge shall be borne by such railway company without reimbursement therefor." By section 1 of chapter 95 it is provided that "the ditches and drains herein provided for shall be surveyed and located along a general course of natural drainage of the lands having due regard for straightening and shortening of such natural streams, water courses, and course of natural drainage. Whenever any such ditch or drain crosses any railway right of way it shall be located at the place of the natural way across

such right of way, unless said railway company shall have provided another place in the construction of the roadbed for the flow of the water, and if located at the place provided by the railroad company, such company shall be estopped from afterwards objecting to such location on the ground that it is not at the place of the natural water way." This last quotation must, of course, be expressive of the common law. If it were not, it too would undoubtedly be unconstitutional. So that I think it very clear that the Thirtieth General Assembly, by section 19 of the act in question, contemplated that the railway in a case such as the one now before us should be reimbursed for the expense it was to in constructing the improvement across its right of way; and that, as a bridge was made necessary solely by reason of the establishment of the ditch, it was a part of the cost of constructing the improvement across its right of way. If this be not true, then there was no reason which I can think of for the Legislature's passing the act known as chapter 95 of the Thirty-Second General Assembly.

The majority refer to section 2021 of the Code. It will be noticed that it simply requires of a railway company that it maintain and keep in good repair all bridges which it may construct for the purpose of enabling its railway to pass over any water course. This surely does not mean that it must build and keep in repair two bridges for the same water course. If it constructs one so as to take care of the water to the satisfaction of both upper and lower proprietors, it has done all that can be required of it. Having undertaken to do this, it is not for some petitioners for a drainage district to insist that it build another bridge for the purpose of enabling it to cross over a ditch to accommodate the water collected for the purpose of drainage. If the parties had agreed upon a ditch being constructed through the channel where the culvert was when proceedings were instituted, we would, in my opin-

ion, have a very different case.   There is no complaint anywhere in this case that the company is not properly taking care of the water which flowed in a natural water course.   Neither lower nor upper proprietor to the railway company is interposing any objection to the means which the railway company has adopted for taking care of the water which naturally crossed its right of way. Section 2021 manifestly has nothing to do with this case. The fact that the railway company agreed with the engineer connected with the drainage proceedings about the place where the ditch should cross the right of way is in no manner controlling.   The question is:   What damage is the railway company entitled to by reason of the construction of this ditch through a solid embankment which it had a perfect right to maintain?   I certainly do not agree to the statement in the opinion that but for the statute there would be no basis for any claim of the railway company to compensation.   No case has as yet gone to that extent.

I feel the duty of dissenting in this case because of the fact that, if the majority are correct, there never can be allowed to an individual landowner anything by way of compensation for the construction of bridges across ditches running through agricultural or farm lands, even though those bridges be necessary to afford access from one part of the lands to another.   If the majority are correct, then the only matter which may be considered in fixing the damages, no matter who the claimant, is the expense of digging the ditch and constructing it according to the plans of the engineer; and, even if these plans show the necessity for bridges or culverts, nothing can ever be allowed therefor.   If this be the construction, then I have very grave doubts about the constitutionality of the law.   I may say in conclusion that I doubt very much whether the question decided by the majority is presented by appellant's counsel.   But, however this may be, I can

not bring myself to the conclusion arrived at by the majority. Though I concede that, under the act of the Thirty-Second General Assembly passed after this case was tried and determined in the lower court, there might be some ground for arriving at the conclusion reached by the majority, although even under that act it would seem that to deprive the railway company of compensation for the building of a bridge where there has been an artificial change in a water course, the ditch or drain must be constructed along and through this artificial channel. Surely, if the ditch is to be constructed at some other point than where the water naturally flows, the company can not be compelled to erect bridges which were not necessary or required before the establishment of the drainage ditch. For instance, if the ditch does not follow the natural or artificial water course, the railway company can not be compelled to open up its embankment and build the required bridge without receiving compensation. No such burden is imposed upon it at common law, nor could it in my judgment be created by statute.

For these reasons, I respectfully dissent from the conclusions of the majority.

SHERWIN, J.—I concur in the dissent of Mr. Justice DEEMER.