G. W. MUNN, Appellant, v. THE BOARD OF SUPERVISORS OF GREENE COUNTY, IOWA, and DRAINAGE DISTRICT NO. 49 OF SAID COUNTY.

Drainage: ESTABLISHMENT OF DISTRICT: REPORT OF ENGINEER: BOUND-ARIES. A drainage engineer's report, plat and profile of a proposed district should be self-explanatory and readily comprehensible so the ordinary non-expert may understand what land is to be included and exactly what is to be done. Where, however, the report clearly described the several tracts to be included, giving the names of the several owners, it was not objectionable on the ground that it did not sufficiently define the boundaries of the district.

Same: REPORT OF ENGINEER: SUFFICIENCY. Where the report of the engineer, in connection with his plat and profile, discloses the route of the proposed drains, the lands within the district, and other matters required by the statute to be shown, and the board of supervisors has accepted and approved of the report as sufficiently specific in these respects, the court will not interfere on the ground that the report is insufficient.

Same: DESCRIPTION OF DRAIN: SUFFICIENCY. Where the engineer's report showed that the proposed drain started in an open ditch on the lowest part of a certain forty-acre tract and terminated in ponds on the boundary lines of certain other forty-acre tracts, the description of the drain was sufficiently definite; especially as the plat and profile were made upon a scale from which the location of the drain could be approximately ascertained.

Same: REPORT OF ENGINEER: ELEVATIONS. The statute requiring the engineer's report to state the elevation of lakes, ponds and deep depressions in the district does not necessitate that levels be taken

of every minor depression or puddle of water, but only such as must be taken into account in determining the extent of the drainage system; and the omission in this respect of ponds and depressions so shallow and inextensive as to be immaterial in determining the extent of the system will not render the report materially defective.

Same: ENGINEER'S REPORT: ADDITIONAL EXPENSE. Failure of the engineer in his supplemental report to state the additional cost of extending the tile at the outlet of the drain was not fatal to the proceedings, where it appeared that the same was extended in consideration of the withdrawal of a claim for damages nearly equal to the additional cost; as the same was but a detail in reaching the final result, likely to arise after the filing of the formal report.

Same: ESTABLISHMENT OF DISTRICT: BENEFITS: EVIDENCE. Although plaintiff's land within the drainage district contained a comparatively small amount of swamp land and not a great quantity ordinarily denominated wet, yet as the evidence showed that the district was desirable, and that the cost of the improvement was not seriously disproportionate to his benefits, the action of the supervisors in establishing the district is not disturbed on appeal.

Same: ASSESSMENT OF BENEFITS: CONSTITUTIONAL LAW. The fact that the statutes authorize the cost of a drainage improvement to be apportioned according to benefits and assessed against the lands of the district by the supervisors of the entire county, rather than by those of the particular district, does not render such statutes unconstitutional, in that the proceedings thereunder constitute taxation without representation.

Taxation: WHAT INCLUDED IN THE TERM "TAX." While the power to tax and the power to levy special assessments are both derived from legislative authority, the term tax as used in the constitution and in the statutes does not include special assessments for a local improvement.

Special assessments: CONSTITUTIONAL LAW: DUE PROCESS. There is no provision in the state constitution limiting the power of the legislature to delegate the authority to levy special assessments for local improvements, except that it denies the right to take property without due process of law.

*Appeal from Greene District Court.*—HON. M. E. HUTCHIN-SON, Judge.

THURSDAY, MAY 15, 1913.

APPEAL from an order of the Board of Supervisors of Greene County establishing drainage district No. 49 of said county.   The plat thereof follows.—*Affirmed.*

MAP
OR
DRAINAGE DISTRICT N° 49.
GREENE COUNTY IOWA.

*J. A. Henderson* and *Wilson & Albert,* for appellant.

*Howard & Sayers,* for appellees.

LADD, J.—On July 10, 1909, John H. Raaz filed a petition with the county auditor of Greene county praying that a drainage district be established, describing the forty acre tracts to be included therein.   This petition was accompanied by the required bond, and H. W. Bean was designated as engineer to examine "the land described in said petition and any other lands which would be benefited by said improvement or necessary in carrying out of said improvement."   He filed his report April 11, 1910; that he had examined land as

required, reciting therein that ''the starting point, the route, the termini, the course and length of the drains through each tract of land, and the elevation of all lakes, ponds, and deep depressions in the district, and all boundaries of said district are shown on the plat and profile filed herewith and made a part of this report. 'Referring to the plat, 'L' indicates the tracts of land so marked can be cultivated every year; the letter 'W' indicates that the tracts of land so marked can be cultivated dry seasons only; and the letter 'S' indicates that the tracts of land so marked cannot be cultivated successfully any season. In my judgment the proposed improvement is practicable and feasible and will be of public benefit or utility or conducive to public health, convenience, or welfare, and the petition should be granted. The various sizes of tile and the number of lineal feet of each size and the depth of the trench at each fifty feet are shown on the profile. The area included in the district is approximately nine hundred sixty acres. The estimated cost of the improvement as proposed is $13,294.50.'' This report appears to have been presented to the board of supervisors April 5, 1910, and it was ''moved and seconded that the plan of the engineer seems expedient to this board of supervisors, and that we do hereby approve and accept such plan and report and direct the county auditor to cause notices to be served herein as provided by law.''

On June 20th following the engineer filed a supplemental report recommending that certain lands be withdrawn from the district, leaving only eight hundred fifty-seven acres therein. He also said, in substance, that, by ''increasing the flatter grades,'' the size of the tile might be reduced, and recommended that the seven hundred sixty-two feet of twenty-inch tile be reduced to eighteen inch; the four thousand five hundred feet of sixteen-inch tile be reduced to fifteen-inch; four thousand seven hundred fifty feet of fifteen-inch tile be reduced to fourteen-inch; and seven hundred fifty of twelve-inch be reduced to ten-inch. He estimated the cost with these changes at $10,970.24, or an average of $12.52 per acre.

On July 15th thereafter the engineer filed another supplemental report recommending that a forty-acre tract be excluded from the district, and that "the eighteen-inch tile be extended five hundred and thirty feet into the N. W. ¼, S. E. ¼, of section 16—83—31."

Again, on July 21, 1910, a fourth supplemental report was filed recommending that all lands in sections 15 and 32 be excluded from the district, and that the highway between sections 21 and 23 be made the limit of the district on the east; "the remainder of the district to remain as shown on the plat." The appellant, G. W. Munn, filed objections to the establishment of the drainage district June 10, 1910; and the board of supervisors, having heard same, entered an order establishing the drainage district as recommended, making the findings essential therefor, and Munn appealed to the district court, where the action of the board of supervisors was affirmed, and the cause is here for review.

I. The several objections interposed by appellant and argued may be stated as considered. The first of these is that the report and plat of the engineer was indefinite as to the location of the proposed drains and the boundaries of the district. Section 1989a2 of Code Supplement provides that:

He, [the engineer] shall make return of his proceedings to the county auditor, which returns shall set forth the starting point, the route, the terminus or termini of the said ditch or ditches, drain or drains, or other improvements, together with a plat and profile showing the ditches, drains or other improvements, and the course and length of the drain or drains through each tract of land and the elevation of all lakes, ponds, and deep depressions in said district, and the boundary of the proposed district, and the description of each tract of land therein and names of the owners thereof as shown by the transfer books in the auditor's office, together with the probable cost, and such other facts and recommendations as he may deem material.

Accompanying his report was a list of the several tracts

of lands included in the district with the names of the own-
ers.  This defined the boundary of the district with sufficient
definiteness.  *Laurence v. Board,* 151 Iowa,
182.  The plat also plainly indicated precisely
what was to be included, and this scarcely
could have been made plainer by writing along
the outside lines the word "boundary."  Nor do we think the
objections to the report of the location of the drains pro-
posed so obscure as to require that the order of the board of
supervisors be set aside.  That body might well have exacted
a more explicit report.  There is no reason for not making
such a report in connection with the plat and profile self-ex-
planatory and readily comprehensible by the ordinary non-
expert.

1. DRAINAGE: es-
tablishment of
district: report
of engineer:
boundaries.

Contrary to the engineer's suggestion, these matters are
intended to be so clear and explicit that the landowners shall
understand precisely what is proposed to be done, and there
is no reason for not accomplishing this, save that assumption
of mystery some experts imagine should obscure scientific
deductions.

If, however, the data contained in the report in connec-
tion with the plat and profile. gives the information exacted
by statute, and this is accepted by the board of supervisors
as sufficiently specific, there is no tenable
ground on which the courts may interfere.
The survey made by the engineer is in a sense
preliminary and intended for use in ascertaining the feasibil-
ity of the improvement.  After the establishment of the
drainage district, the board of supervisors is required to ap-
point "said engineer, or, if deemed advisable, may appoint a
new engineer as commissioner, who shall make· a permanent
survey of said ditch, as so located, showing the levels and
elevations of each forty acre tract of land, and shall file a
report of same with the county auditor."  Section 1989-a6.
In this respect the statutes have been changed since *Zinzer v.
Board,* 137 Iowa, 660, and manifestly to avoid unnecessary

2. SAME: report
of engineer:
sufficiency.

expense in event the improvement be not ordered, and the circumstance that the survey is preliminary, to be followed by a permanent survey, and the scale, readily distinguishes the case from *Johnson v. Morrison County,* 107 Minn. 87 (119 N. W. 502) cited by appellant. The engineer testified that he had not undertaken the definite location of the improvement, for that his work was preliminary. All meant by this was that the location of the drains had not been permanently established, and of course this could be done only after the establishment of the district. The plat indicates the particular forty acres where the drain begins, its course and that of the branches and the forty acres wherein the drains end. Moreover, the character of land is shown on the plat, and it appears therefrom that the drains are located in the lowest lands, and the particular forty-acre tract crossed, and the names of the several owners. The plat is drawn on a scale of eight inches to the mile, and by the use of this it can be ascertained approximately how far the drains proposed are from the lines of the forty-acre subdivisions, and the profile discloses the number of feet of different sized tile to be laid in each man's land. The grade and necessary cut every fifty feet also is given.

Manifestly the only matters which can well be claimed to have been indefinite are the starting point and termini; but the first is shown to be at an open ditch in the lowest land on the forty and the last on the lines of different forties in the center of ponds, and, as we think, are sufficiently definite, especially in view of the availability of the scale. These matters, as said, are preliminary, and, if sufficiently definite to enable the landowners to understand the system proposed and the injury which may result to any particular tract and the board of supervisors to intelligently pass on the feasibility of the enterprise, this is all that is required. Nothing will be gained by construing the statute more strictly, and with this con-

3. SAME: description of drains: sufficiency.

struction it may be readily complied with by the men who ordinarily have to deal with such matters.

Again, the elevation of only four of the ponds are found in the report. The evidence disclosed that there are three others in the district in which water stands most of the time in ordinary seasons. The engineer called by appellant described them as "little dips," and his survey shows they can be drained into the proposed tile drain. One covered about one-tenth of an acre, another two-tenths, and the three an acre or two. The engineer making the report testified, in substance, that these ponds were so shallow as to be of no concern.

4. SAME: report of engineer: elevations.

"Pond" is defined by the lexicographers as a body of water naturally or artificially confined. It is smaller than a lake, but of some appreciable area.

By exacting the elevations of all lakes, ponds, and deep depressions, the statute did not design that levels should be taken of every puddle of water in the proposed district, but of all such of a depth or area necessarily to be taken into account in estimating the character and extent of the drainage system to be adopted. The circumstance of omitting these little dips in the earth, shown to be readily drainable through the tile at the depth proposed, ought not to be regarded as such a defect as to render the commissioner's report insufficient upon which to base the order of the board of supervisors.

The additional cost of extending the eighteen-inch tile five hundred thirty feet at the outlet was not stated in the supplemental report of the engineer. But, as the evidence shows this was done in consideration of the withdrawal of a claim for damages allowed in the sum of $400, and laying of the additional tile would cost approximately $600. This was but a detail in reaching the final result, an adjustment such as is likely to be involved in the proceedings subsequent to the filing of the formal report by the engineer; and, though the addi-

5. SAME: engineer's report: additional expense.

tional cost might well have been stated, we are not inclined to regard the variance as fatal to the proceedings. · The objections in the respects mentioned were rightly overruled. ·

II.   It cannot be said from the record before us that the cost of the improvement is so out of proportion to the benefits as to preclude it from being undertaken.   True, there is

6. SAME: establishment of district: benefits: evidence.

a comparatively small amount of swamp land and not a great deal that is ordinarily denominated wet, but nearly all of it, not already tiled, will be benefited by drainage.   Both the engineer who made the survey and the engineer who surveyed it for plaintiff were of opinion that a drainage district should be established; and plaintiff, who owned eighty acres of land therein, was the only one having land therein who opposed.   Without reviewing the evidence, it is enough to say that it was not such as to justify interference with the resolution of the board of supervisors establishing the district.   See *Temple v. Hamilton County,* 134 Iowa, 706; *In re Drainage District No. 3,* 146 Iowa, 564.

III.   A branch of the proposed drain will enter the west forty of plaintiff's land from the west and pass to the northeast.   This runs through high land.   An eight-inch tile drain, with branches constructed about twenty-five years ago, begins at the west line some distance below this branch and follows on a natural swale east and northeast to the north line some distance east of said branch and empties on the forty acres north. The only direct benefit to plaintiff's forty acres is that the construction of this drain would furnish a tile outlet instead of the swale or ditch into which it now empties.   This is of some advantage, depending somewhat on the lay of the land, the character of the soil, the size and grade of the main drain, and the amount of water coming into it from above.   If an adequate drain, no argument is required to show that it will carry the water from the lateral more efficiently than would a ditch or swale.   Moreover the seepage back into plaintiff's land of the water emptied at the boundary, which is unavoidable when

a tile drain runs into a ditch or swale, is entirely obviated by discharging into an adequate tile drain. Besides this, there is a benefit in having the adjoining lowlands reclaimed and thereby avoiding the natural seepage of water therefrom.

Appellant, however, argues that, as there is a fall of about eight feet in about three thousand feet before reaching the point where his eight-inch tile would connect with the main drain, the water from above would necessarily run off before his tile could flow therein. This might be true were the main drain to run full, but, with a fourteen-inch drain and a fall such as described, it is not probable that it will often flow at full capacity, and, when it does not, the drain of plaintiff will empty therein freely. Indeed, the engineer who surveyed for him recommended this branch be of ten-inch tile instead of fourteen inches in diameter, and it does seem that the tile of the branches must be too large (one fourteen and the other fifteen-inch), or the tile of the main (eighteen-inch) too small, for the grade of the latter is considerably less than either of the former. However, it is not our province to decide whether a better system might have been adopted, but whether that chosen is such that the board of supervisors were warranted in approving it.

We are of opinion that, in affording a better outlet, the system will be of some benefit to the west forty acres of plaintiff's land. Another possible incidental benefit is the furnishing to the owner of the land to the west an outlet through which he can, by laying lateral drains, drain his land so that the water therefrom will not overflow on plaintiff's land. Such benefit is somewhat remote, but if appreciable is to be considered in ascertaining the benefits derivable from the establishment of the system. See *Zinzer v. Supervisors*, 137 Iowa, 660. There was no error in including all of plaintiff's land within the district, and we need not consider whether the fixing of boundaries of such a district is legislative; that being doubtful, at least, in view of the peculiar provisions of our statutes.

IV. Appellant further contends that the drainage laws are unconstitutional in that they authorize taxation without representation. The precise point is that under the statutes, though the cost of the improvement is apportioned according to benefits and levied against the lands included within the district, this is done by the board of supervisors elected by the electors of the county and not by those of the particular district.

7. SAME: assessment of benefits: constitutional law.

Undoubtedly the power to tax is a legislative power and may not be delegated save to municipalities to be exercised by the proper legislative authority of the corporation. *State v. Mayor, etc., of Des Moines,* 103 Iowa, 76. But, though the authority to levy a special assessment is derived from the same source (i. e., from the Legislature), it does not follow that the words "tax" or "taxes," as found in the Constitution, or as ordinarily understood, means the same thing as or includes special assessments. As remarked in *State v. Fuller,* 34 N. J. Law, 227, assessment is "distinguishable from our general idea of a tax, but owes its origin to the same source or power." (See *City of New London v. Miller,* 60 Conn. 112 (22 Atl. 499). The tax is levied for the purpose of paying the expenses of the government, and the only advantages therefrom to the taxpayer are to him as a member of organized society, and would have been enjoyed had he no property to tax or had he evaded taxation. In a sense, then, he is the poorer for having paid, while in theory he who pays a special assessment loses nothing, since he is fully compensated by the special benefits conferred by the improvement.

8. TAXATION: what included in the term "tax."

Taxes proper or general taxes proceed upon the theory that the existence of government is a necessity; that it cannot continue without means to pay its expenses; that for those means it has the right to compel all citizens and property within its limit to contribute; and that for such contribution it renders no return of special benefit to any property, but only secures to the citizen that general benefit which results

from protection to his person and property and the promotion of those various schemes which have for their object the welfare of all. . . . On the other hand, special assessments or special taxes proceed on the theory that when a local improvement enhances the value of neighboring property, that property should pay for the improvement. (*Illinois Central Railroad Co. v. Decatur,* 147 U. S. 190, 197 (13 Sup. Ct. 293, 37 L. Ed. 132.)

Speaking of the term "assessment," the court said in *Taylor v. Palmer,* 31 Cal. 240, 254:

It is not a power to tax all the property within the corporation for general purposes, but a power to tax specific property for a specified purpose. It is not a power to tax property generally founded upon the benefits supposed to be derived from the organization of a government for the protection of life, liberty, and property, but a power to tax specific property founded upon the benefit supposed to be derived by the property itself from the expenditure of the tax in its immediate vicinity.

The development of the law of special assessment is interestingly discussed by George, C. J., in *Town of Macon v. Patty,* 57 Miss. 378 (34 Am. Rep. 451), and in the course of the opinion it is said:

A local assessment can only be levied on land; it cannot, as a tax can, be made a personal liability of the taxpayer; it is an assessment on the thing supposed to be benefited. A tax is levied on the whole state, or a known political subdivision, as a county or town. A local assessment is levied on property situated in a district created for the express purpose of the levy, and possessing no other function, or even existence, than to be the thing on which the levy is made. A tax is a continuing burden, and must be collected at stated short intervals for all time, and without it government cannot exist; a local assessment is exceptional both as to time and locality; it is brought into being for a particular occasion, and to accomplish a particular purpose, and dies with the passing of the occasion and the accomplishment of the purpose. A tax is levied, collected, and administered by a public agency, elected

by and responsible to the community upon which it is imposed; a local assessment is made by an authority *ab extra*. Yet it is like a tax in that it is imposed under an authority derived from the Legislature, and is an enforced contribution to the public welfare, and its payment may be enforced by the summary method allowed for the collection of taxes. It is like a tax in that it must be levied for a public purpose, and must be apportioned by some reasonable rule among those upon whose property it is levied. It is unlike a tax in that the proceeds of the assessment must be expended in an improvement from which a benefit clearly exceptive and plainly perceived must inure to the property upon which it is imposed, or else the courts will interfere to prevent its enforcement.

And see decisions collected under section 35 of Page & Jones on Taxation by Assessment.

Because of this distinction, in the absence of anything indicating a contrary intention, the use of the term "tax" in Constitution or statute is construed not *prima facie* to establish an intention to include local or special assessments. Page & Jones on Taxation by Assessment, section 39.

Nothing is to be found in the Constitution of this state limiting the power of the Legislature to delegate the authority to levy special assessments, save as it denies the right to take property without due process of law.

**9. SPECIAL ASSESSMENTS: constitutional law: due process.** Our drainage law is not inimical to this objection. *Yeomans v. Riddle*, 84 Iowa, 147), and we know of no constitutional requirement or principle of law exacting that the officers who apportion the cost and levy the assessment to pay the same against the lands benefited by the improvement shall be chosen by the electors of the district. The assessment for such improvement, even though it may contribute to the general welfare, is because of the benefits conferred and in proportion thereto, and is not exacted because of any general advantage to the public. *Zinzer v. Supervisors,* 137 Iowa, 660. In no proper sense is the doctrine inhibiting taxation without representation, a doctrine which must ever remain the political faith of every free people, involved.

Our forefathers were not troubled about assessments for local improvements, but concerning contributions to the support of the government in which they were accorded no participation and the reason for denying the right to delegate the power to levy taxes to other than municipal bodies to be exercised by their legislative authority has no application to special assessments. Drainage statutes differ in the several states; some authorizing the levy of special assessments for the cost of drains by commissioners and others by municipal bodies, and both methods have by the weight of authority been approved. The precise point was considered at length in *Soliah v. Cormack,* 17 N. D. 393 (117 N. W. 135), where the authorities are reviewed. See, also, *Hagar v. Reclamation Dist.,* 111 U. S. 701 (4 Sup. Ct. 663, 28 L. Ed. 569) ; *Carson v. District,* 51 Ark. 513 (27 S. W. 590) ; Page & Jones Taxation by Assessment, section 250. See *Adams v. Shelbyville,* 154 Ind. 467 (57 N. E. 114, 49 L. R. A. 798, 77 Am. St. Rep. 484). Decisions apparently to the contrary will be found to involve an expense or indebtedness payable only by general taxation. See *Cook v. City of Detroit,* 124 Mich. 426 (83 N. W. 130) ; *People v. Common Council of Detroit,* 28 Mich. 228 (15 Am. Rep. 202).

We are of opinion that the fact that the officers who levy the assessments are not elected by the electors of the drainage district does not render the statutes invalid, and that the other objections to the establishment of the drainage district were rightly overruled.—*Affirmed.*