O. M. HATCHER, Appellant, v. BOARD OF SUPERVISORS OF GREENE COUNTY, IOWA, and DRAINAGE DISTRICT NO. 37 OF GREENE COUNTY, IOWA, Appellees.

**Drainage:** APPEAL: OBJECTIONS: REVIEW.   Objections to an assessment for drainage purposes not made at the hearing before the board of supervisors will not be considered on appeal.

**Same:** ORGANIZATION OF DISTRICT: PUBLIC NECESSITY.   To authorize the establishment of a drainage district it must appear that the improvement will be conducive to the public health, convenience, welfare, or utility.   It is not necessary that all of such reasons for its establishment exist, but if any one is the essential purpose of the plan it may be carried out.

**Same.**   The reclamation of swamp and overflowed land, which otherwise would be unproductive in whole or in part, is a matter of sufficient importance to the state and its citizens as a whole, as well as to those individuals whose property is thus directly affected, to authorize the formation of a drainage district.

**Same:** DRAINAGE DISTRICTS: METHOD OF ORGANIZATION.   The constitutional provision authorizing the organization of drainage districts and vesting the proper authorities with power to construct and maintain them does not require a separate organization for each district, constituted directly by the people of the territory affected: but this work was properly left by the legislature to the several boards of supervisors.

**Same:** ASSESSMENT OF BENEFITS: JURISDICTION.   Failure of a drainage engineer's report to include all items of cost entering into the proposed plan of drainage does not affect the jurisdiction of the board of supervisors to assess benefits.

**Same:** CONDITIONS REQUIRING DRAINAGE: EVIDENCE.   The existence of a pond covering sixty or seventy acres rendering the same useless for the purpose of cultivation for a long series of years, and the fact

that other lands within the district were such as to require drainage, justified the board of supervisors in declaring the lands proper to be embraced within a drainage district, and that the plan was in the interest of the public health and welfare.

Same: CONSOLIDATION OF PROPOSED DISTRICTS. Divisions of land natu-
7    rally draining in opposite directions may be combined in a single
     district, where the cost may be lessened and the burden of no one
     increased, if the assessments placed upon the several land owners
     are based wholly upon the cost of their respective divisions.

Same: ASSESSMENTS: PRESUMPTION AS TO CORRECTNESS. A drainage
8    assessment made by the commissioners is presumed to be correct,
     but may be set aside for fraud, gross error or mistake.

Same: ASSESSMENTS: LIMITATION OF AMOUNT: STATUTES. The statute
9    limiting assessments for public improvement by a city council or
     board of public works to twenty-five per cent of the value of the
     tract has no application to assessments in drainage proceedings.

*Appeal from Greene District Court.*—HON. F. M. POWERS, Judge.

SATURDAY, JANUARY 20, 1914.

APPEAL from assessment of benefits resulting from the establishing of a drainage district.—*Affirmed.*

*J. F. Gallup,* for appellant.

*Wilson & Albert* and *Howard & Sayers,* for appellees.

WITHROW, J.—I. On February 17, 1909, a petition, accompanied by a proper bond, was filed in the auditor's office of Greene county, Iowa, praying for a drainage district. On March 1, 1909, the board in session appointed H. W. Thomson, disinterested and competent, as engineer therein. On August 12, 1909, the engineer filed his report, accompanied by a plat and profile as required by law, and on August 12th he filed a supplemental report. On August 12, 1909, the

board approved the plan reported by the engineer, and on September 23, 1909, after due notice, the board found that the petition was sufficient and that the improvement would be conducive to the public health and welfare and that it was a public necessity.   On November 22d the board finally established a drainage district and in the same order appointed commissioners to make the assessments, and on the same date the engineer in charge recommended a change of grade in the lower part of said drainage district and a change from an open ditch to a tile drain, together with an extension at the outlet of said drainage district.   Thereafter by resolution, in accordance with the recommendation of the engineer, the board made two divisions of said district, designated as 37-a and 37-b. The commissioners appointed to assess made report, and due notice was given of such assessment, and thereupon the appellant, Hatcher, filed with the board of supervisors in due time his objection to said proposed assessment.   The hearing was had on his objections, and the assessment reported by said commissioners was confirmed by the board on January 7, 1910.   Appellant duly appealed therefrom to the district court, where this matter came on for trial in its regular course. Upon the trial in the district court judgment was entered confirming the action of the board of supervisors, and O. M. Hatcher appeals.

The appellant, Hatcher, is the owner of the four forty-acre tracts constituting the northeast quarter of section 4, township 82 north, range 30 west of the 5th P. M., Iowa, and lying within the drainage district in controversy.   In the district court trial was had on a petition in equity, and the objections made before the board of supervisors.

II. Many objections are raised on this appeal, some of which were not made in the hearing before the board of supervisors, and, in so far as they are outside of the questions then presented, they cannot be considered on this appeal.   *Lightner v. Greene County*, 145 Iowa, 95; *Hay v. Hamilton County*, 146 Iowa, 280.

1. DRAINAGE: appeal: objections: review.

As filed with the board of supervisors they were as follows: (1) That there was no such locating and establishing of the district as to warrant the appointment of commissioners to make the apportionment of cost. (2) That the proposed district consisted of two distinct undertakings; the costs and benefits of one having no relation to the other. (3) That the commission was not constituted as required by law. (4) That the lands were not classified by the commissioners in graduated scale of benefits, marked on a percentage scale. (5) That the commissioners failed to grade the lands with reference to benefits, but made classification based upon the necessity of each tract. (6) That the assessment was erroneous and inequitable and not in proportion to the benefits to the several tracts in the district. (7) That the assessment of appellant's land was in excess of benefits. (8) That the law empowering the board of supervisors to proceed in the various steps of the undertaking is unconstitutional in that it empowers the board to exercise executive, legislative, and judicial functions.

In his statement of the issues, appellant presents sixteen different questions for solution and answer. The first five were not raised in the objections above noted but go to the power of the Legislature "to permanently divest the owners of lands of their proprietary rights regarding the drainage improvement thereof, and invest the board of supervisors, chosen without representation from the particular district, with control over the drainage improvement," and further whether the method of establishment of a drainage district under the statute constitutes such an organization of a drainage district as is contemplated by the constitutional amendment relating to the subject of drainage of farm lands. All other issues stated either are comprehended in the objections filed below or present questions not there raised, and which therefore, as to the latter, may not be considered.

III. Appellant's counsel has with much ability and thoroughness argued in this court the question of the constitutionality of the proceedings now the subject of attack; his

argument being largely, if not entirely, based upon the proposition that by the methods employed, in view of the facts in this case, the object of the proposed drainage system is the reclamation and provision for drainage of the lands of individuals, without any resulting public benefit, and without a public necessity for so doing, and that it is therefore an infringement upon the right of the individual in the full control of his property.   The argument is broader than the filed objections, but, going to the ultimate right in the case, we give it attention as a challenge of jurisdiction.

It must be conceded that the principle upon which is based proceedings of this nature is that some public necessity calls for such action, or that it will result in the public welfare, as distinguished from purely private benefit.   It must also be conceded that under the facts in this case the larger result of the proposed drainage system will be to the benefit of the owners whose lands are reached and directly affected by it. By resolution of the board of supervisors it was declared that the petition for this drainage district was sufficient in form and matter, and that "the improvement will be conducive to public health, convenience, welfare, and utility and a public necessity."   We do not understand the appellant to seriously dispute the proposition that, if any one of the reasons given is the essential purpose of the plan, such is then a proper exercise of the police power by the body which may have lawful authority to carry it out.   This court has frequently so held.   *Sisson v. Board*, 128 Iowa, 457; *Railway Co. v. Board*, 144 Iowa, 14, and cases cited.

2. SAME: organization of district: public necessity.

Accepting this as the settled rule in this state and also in other states generally, that particular branch of the argument may be passed.   But we should properly note the larger question, which is so fully argued, as to what constitutes such conditions, the change in which will be for the public welfare.   Recognizing in its fullness the individual right to the control of property held by

3. SAME.

private ownership, there accompanies that right, as a limitation upon it, the right of government to exercise control, at times absolute but more often abridged, but always upon the claim that such control is necessary to subserve the public good. It has been definitely recognized by the courts of many states that it is a valid exercise of the police powers for the public good, in drainage projects, to reclaim for the uses of agriculture lands which without such would be unproductive or have a limitation upon their productiveness because of their being swamp or overflow lands. The courts so holding have not recognized as the sole question that of a purpose exclusively or essentially of public benefits in the results sought, but have proceeded upon the broader grounds that it is important to the state, to its citizens, as a whole, as well as to individuals whose property may thus be directly affected by charges for benefits, that all the resources of a state shall, so far as is practicable, be brought to the point of effective service. This always with the guarded provision that the apportionment of cost among individuals shall not exceed the benefits resulting to them from the improvement.

Our own case of *Sisson v. Board of Supervisors, supra,* and cases there cited, recognizes this as an element to be considered and as a proper basis for the exercise of the police power; and in the light of the many cases so holding, the rule being fairly uniform, it must be concluded that the General Assemblies which submitted to the people the constitutional amendment granting powers for providing such by methods in a degree compulsory, and the people who by their votes adopted it, intended that the exercise of the powers thus granted should be regulated by the law as already determined as to what constitutes a public use. We recognize this to be the rule which should have application in cases of this nature, and with such as our premise we inquire into the particular objections raised by the appellant.

IV. It is claimed that the provisions of the constitutional amendment that "the General Assembly may enact laws per-

mitting the owners of lands to construct drains, ditches, and levees for agricultural purposes across the lands of others, and provide for the organization of drainage districts, and vest the proper authorities with power to construct and maintain'' them, have not been met in our present statute, which confers such powers upon the board of supervisors. The line of argument is in substance that the conditional provision contemplates that the General Assembly shall provide for an organization, independent of the county government, and also that a body which exercises such powers must be a part of, chosen by, and directly responsible to the people of the affected area. We have held in *Munn v. Board of Supervisors,* 161 Iowa, 26, that there is nothing in the Constitution limiting the power of the Legislature to delegate authority to levy special assessments, nor requiring that the officer in which such power is placed shall be chosen by the electors of the district. Many authorities in support of the proposition are cited in the *Munn* case, and we content ourselves with this general reference to them, approving the rule there stated.

4. SAME: drainage districts: method of organization.

We cannot agree with the contention of appellant, the effect of which would be to require a separate official organization for each drainage district. This would require all of the machinery of a county government in the matter of collecting the special assessments, and serve no purpose not now as well met by the means provided by the statute. Were it a legal right in the residents of a district to effect their own organization and choose their own officers, and this we have held in the *Munn* case is not absolute, there would be force in the claim. Under our previous holding there is none.

While the amendment to the Constitution states that the General Assembly may provide for the organization of drainage districts and vest the proper authorities with the power to make such organization effective there appears no direction' as to methods nor as to the nature of the organization. It then must be assumed that the legislative acts then a part of

our statute, and such as have since been adopted, in the absence of any other legislative provisions, presented to the legislative mind a plan which was feasible ,and effective. Inasmuch as under our previous holdings there was no transgression against constitutional mandates, we are clearly of the opinion that the means provided are within the law.

V. Appellant further claims that the board of supervisors was without jurisdiction to appoint commissioners to assess benefits, as the cost of the improvement was not correctly estimated by the engineer in his report. The particular point urged is that' the report of the engineer was not comprehensive of all that entered into the question of plan and cost and was therefore not a sufficient guide to the commissioners in making the assessments. That such does not go to the jurisdiction of the board to act upon the question is determined *In Re Drainage Dist. No. 3,* 146 Iowa, 564; *Laurence v. Board of Supervisors,* 151 Iowa, 182, and *Munn v. Board, supra.*

5. SAME: assessment of benefits: jurisdiction.

VI. Passing from the questions which have reached to the right of the proceeding, we inquire, under the facts, whether there existed conditions which justified the establishment of the drainage district, and the subsequent assessment of benefits. In other words, was the land embraced within the district of such character that its reclamation would result in public good and be for the public welfare. Appellant owns a fractional quarter section of land containing one hundred and seventy acres, all of which is within the district. A railroad passes through it, sixty acres lying on the east side, and one hundred and ten acres on the west side, of the right of way. On the land is a body of water known as Bull Head, which covered at least eighty or ninety acres of the tract. One line of the tiling embraced in the system runs through the pond. Prior to the laying of the tile, the pond was useless, practically never free from water; this condition, according to the testimony of some witnesses, having continued

6. SAME: conditions: requiring drainage: evidence.

for at least twenty-five or thirty years, while others testified that it occasionally was dry. Since the drain was laid a large part of the land and the larger part of the pond had raised a good crop in the year of its cultivation, and at the time of the trial was sowed to fall wheat. Other lands within the district were such as to require drainage and, as shown by the evidence, were benefited and in some instances re-claimed by the system. Without in more detail stating the evidence in its bearing upon this branch of the case, we con-clude that the conditions shown were such that in declaring the lands as proper to be embraced within the drainage dis-trict, and that the scheme or plan was in the interests of the public health and welfare, the board of supervisors acted within its powers.

VII. It is claimed that the project consisted of two un-dertakings which were distinct from each other, having no proper relation one to the other, and that benefits resulting to one in no manner affected lands in the other, and that the levy of assessments, being based upon the entire project instead of upon the separate divisions, is inequitable and, as to appellant's lands, excessive. The land in the district naturally drained to the south. It appears that the drainage of the north division of the district through an outlet of its own was car-ried to the north, and that of the southern division to the south. Appellant's land was in the southern division. The two divisions constituted the district. The engineer testified that the total cost, had the drainage been entirely to the south outlet, would have been about $49,000. Under the plan of division the cost of the north part was $4,437.69, and that of the south $37,493.73; the aggregate of the two being much less than would have been the cost had the drainage been carried wholly to the south. It does not appear from the record that as a result of the division there was any increase in the cost of draining appellant's lands, or that his assessment was in any degree lifted by it. His claim, therefore, must

7. SAME: consoli-
dation of pro-
posed districts.

rest upon the bare legal right urged by him that by the division the requirements of the statute were not followed, and that the assessments made were unwarranted. But if first having been determined that contiguous lands within a given area require drainage, and that conditions exist which warrant the board of supervisors in so ordering it, if it appear that cost may be lessened and the burden of no one increased by adopting a scheme which embraces two plans instead of one, but covering the area of the original plan, we see no good reason why the amended plan may not be carried out, if in the assessment of benefits the burdens placed upon the several landowners are based solely upon the cost of their respective divisions. There appearing no prejudice resulting to appellant because of the division, he has no basis for just complaint.

VIII. Objection is made to the classification of the various tracts in the south division, as resulting in an inequitable distribution of the burden. One forty-five-acre tract of the appellant was assessed upon the basis of 100, that being taken as the maximum, and a forty-acre tract was upon the basis of 85.76.

8. SAME: assessments: presumption as to correctness.

Two others containing forty-one and thirty-six acres, respectively, were assessed upon a basis of about 27. The two which were subjected to the higher assessment substantially comprised the pond, and the assessment evidently was made upon the theory that by the system it was made possible to entirely reclaim it. The total amount of appellant's assessment was $5,752.18.

The report of the commissioners spreading the assessments is presumed to be correct (*Chicago & Northwestern Ry. v. Hamilton Co.*, 141 Iowa, 380) but may be set aside for fraud, gross error, or evident mistake. Much testimony was introduced upon the question of the inequality of the assessments, but, from a consideration of the record, we are of opinion that the trial court in confirming them did not err. While it is true that the plan does not afford to the ap-

pellant complete drainage, it was of large benefit to his lands.

No drainage plan is expected to fully meet all the requirements of individual owners, but private drains and laterals must often supplement the system for the highest results.   The evidence upon the subject of values was such as to warrant the trial court in the conclusion that the increased values of appellant's lands, resulting from the system, justified the amounts assessed as benefits against it, and, giving to the evidence upon that subject its proper weight, we are inclined to so hold.   Nor does it appear that, upon the basis of assessment adopted, the lands of appellant were compelled to bear a burden out of proportion to other benefited lands within the district.

IX. It is urged that, this being a special assessment, the limit of the amount must be not to exceed 25 per cent. of the fair value of the land against which it is laid, and that the assessments upon two of the tracts were in excess of that rate.   Reliance is placed upon section 792-a, Code Supplement.   That such does not apply to special assessments in drainage districts we have held *In Re Farley Drainage Dist.*, 140 Iowa, 339.

9. SAME: assessments: limitation of amount: statutes.

We conclude that the finding of the trial confirming the assessments should be and it is—*Affirmed*.   All members of the court concur.